[Civil No. 1030. Filed March 27, 1908.]

[94 Pac. 1122.]

## WILLIAM WALTON, Defendant and Appellant, v. P. J. McKINNEY, Plaintiff and Appellee.

1. SPECIFIC PERFORMANCE—GROUNDS—CONTRACT—REPUDIATION OF VENDEE—EFFECT.—A contract to purchase land provides that the vendor should give a good and sufficient warranty deed and furnish an abstract showing a perfect title to the property. The vendee made a cash payment of $500 and later, under the terms of the contract, tendered the balance of the purchase money but refused to accept the deeds and abstract offered, on the ground that the title was defective; whereupon the vendor attempted to rescind and brought ejectment for the possession of the property which was in the vendee, to which action defendant filed a cross-complaint, asking for specific performance of the contract. In the course of the trial the vendee discovered that the defect in the title was a mere equity, and then and there tendered the purchase price in open court, to

XI Ariz.—25

take the title which the vendor had, which offer was refused by the vendor. *Held*, that inasmuch as time was not of the essence of the contract, and the contract had been partially performed by the part payment, and it was in the power of the vendor to make a good title, the vendee was strictly within his rights in refusing to accept a defective title, and was not in default, and could waive the defective title and accept whatever title the vendor had, and was entitled to a specific performance of the contract.

2. SPECIFIC PERFORMANCE—DEFENSE—APPRECIATION IN VALUE OF PROPERTY.—Where suit was brought to specifically enforce a contract in the conveyance of land, payments having been delayed because the vendor did not furnish a perfect title, it is no defense that since the contract was entered into the property has greatly appreciated in value, where the payments were not delayed from motives of speculation.

3. APPEAL AND ERROR — REVERSAL — RENDITION OF JUDGMENT — REV. STATS. ARIZ. 1901, PAR. 1591, CONSTRUED.—Paragraph 1591, *supra*, directly provides that where, on a reversal of a cause, there is no matter of fact to be ascertained or damages to be assessed, and the matter to be decreed is certain, judgment will be rendered by the appellate court.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for the County of Maricopa. Edward Kent, Judge. Reversed, and judgment rendered.

The facts are stated in the opinion.

A. C. Baker, and Walter Bennett, for Appellant.

In this case not only was Walton a *bona fide* occupant of the land, but he was a vendee in possession and not in default. He was ready and willing and able to perform all the conditions of his contract. It was the vendor McKinney who was in default for failure to furnish Walton with a good title to the premises, and in such case the authorities are unanimous that ejectment cannot be maintained against the vendee in possession who is not in default. 10 Am. & Eng. Ency. of Law, 2d ed., 497; *Schoolfield* v. *Rhodes*, 82 Fed. 153, 27 C. C. A. 95; *Rose* v. *Perkins*, 98 Mo. 253, 11 S. W. 622; *De Bernardi* v. *McElroy*, 110 Mo. 650, 19 S. W. 626; *Gibbs* v. *Sullens*, 48 Mo. 237; *Glascock* v. *Robards*, 14 Mo. 350, 55 Am. Dec. 108; *Fulkerson* v. *Brownie*, 69 Mo. 371; *Love* v. *Watkins*, 40 Cal. 547, 6 Am. Rep. 624; *Downer* v. *Richardson*, 9 Vt. 377; *Mack* v. *Dailey*, 67 Vt. 90, 30 Atl. 686. "Where a vendee is in possession of land under an executory contract,

notice to quit will be insufficient where it appears that, at the time, the vendor, on account of defective title, is unable to perform on his part, and before the vendee can be ousted from his legal possession in an action of ejectment, it is necessary for the plaintiff to notify him that he has full title to the premises and can perform on his part and make a demand for payment.'' 10 Am. & Eng. Ency. of Law, 2d ed., 499; *Getty* v. *Peters,* 82 Mich. 661, 46 N. W. 1036, 10 L. R. A. 465. We think there can be no question that the obligation entered into by McKinney to furnish Walton with a perfect title could only be discharged by performance or by a waiver by Walton, and that obligation rested on McKinney at the time of the trial, when Walton in open court waived full performance and offered to accept partial performance, and he cannot be denied that partial performance because he had before refused to accept it. *Harrigan* v. *McAleese* (Pa.), 16 Atl. 31; *Saldutti* v. *Flynn,* 72 N. J. Eq. 157, 65 Atl. 246; *Haffey* v. *Lynch,* 143 N. Y. 241, 38 N. E. 298.

Increase in the value of the land is no reason for denying specific performance, even if the delay is caused by the plaintiff, if such delay is not unreasonable or in bad faith. *Harris* v. *Greenleaf,* 117 Ky. 817, 79 S. W. 267; *Franklin Tel. Co.* v. *Harrison,* 145 U. S. 459, 12 Sup. Ct. 900, 36 L. Ed. 776; *Willard* v. *Taylor,* 8 Wall. (U. S.) 557, 19 L. Ed. 501.

Armstrong & Lewis, for Appellee.

Walton had gone into possession under a contract which did not give him the right thereto, and, repudiating McKinney's title, refused either to pay or surrender possession. He had a duty to perform under the contract even though McKinney's title was imperfect, i. e., either to rescind, or offer to rescind and restore possession, or, if he chooses to retain possession under the contract, to pay the purchase money and interest, according to the contract. *Gates* v. *McLean,* 70 Cal. 42, 11 Pac. 489-492; *Taft* v. *Kessel,* 16 Wis. 273. ''But if after maturity of the purchase money the vendor tenders a deed and demands payment, which the vendee refuses to make, or if the vendee has abandoned the purchase and repudiates the title of his vendor, in such case the vendee forfeits the benefit of the contract, and he cannot avail himself of it as a defense to an action of ejectment by his vendor.'' *Hicks* v. *Lovell,* 64 Cal. 20, 49 Am. Rep. 679, 27 Pac. 942. That an action in

ejectment would lie, see *Worley* v. *Nethercott*, 91 Cal. 512, 25 Am. St. Rep. 209, 27 Pac. 767; *Rhorer* v. *Bila*, 83 Cal. 54, 23 Pac. 274.

Where a person who contracts to buy land refuses to accept a warranty deed when tendered on account of an alleged defect in the title, he cannot subsequently, while the alleged defect exists, maintain an action for specific performance on a demand and refusal to convey. *Goldthwait* v. *Lynch*, 9 Utah, 186, 33 Pac. 699.; *Long* v. *Miller*, 46 Minn. 13, 48 N. W. 409; *Milmoe* v. *Murphy*, 65 N. J. Eq. 767, 56 Atl. 292; *Riley* v. *Allen*, 71 Kan. 625, 81 Pac. 186.

SLOAN, J.—The appellee, P. J. McKinney, brought suit in ejectment in the court below against appellant, William Walton, to recover possession of the property described as the southeast one-quarter and the east one-half of the northeast one-quarter of the northeast one-quarter of section 3, township 1 north, range 2 east, Gila and Salt River base and meridian, containing sixty acres of land, together with three-fourths of water right No. 175 in the Grand Canal attached to said land, also a certain lateral ditch and sixty shares in the Appropriators' Canal Company attached to said land. The appellant, Walton, filed his answer to the complaint, which contained a general demurrer, a general denial, and a cross-complaint. The cross-complaint set forth that a contract.for the sale of the premises in question was entered into between the parties to the suit on the fifth day of April, 1906, wherein McKinney agreed to sell the property described in the complaint, and, in addition, sixty shares of the Salt River Valley Water Users' Association, for the consideration of $6,000, to be paid on or before the first day of May, 1906, and to execute and deliver to Walton a good and sufficient warranty deed to said property, and to furnish to Walton an abstract of title showing perfect title to the same upon Walton's demand being made therefor on or before said first day of May, 1906, and wherein Walton agreed to pay $500 at the time of the execution of the contract, and the remainder of the purchase price on or before said first day of May, 1906, upon the execution and delivery of said deed and the furnishing by McKinney of said abstract of title showing perfect title to said property. It is further alleged in the cross-complaint that said cash payment of $500 was paid by Walton at the time of the execution of the contract, and that thereupon he entered into posses-

sion of said property with the knowledge and consent of Mc-
Kinney, made valuable improvements thereon, and thereafter
remained ready and willing at all times to perform his part
of the contract. It is further alleged in the cross-complaint
that McKinney failed to carry out and perform his part of
the contract, in that he neglected and refused to execute and
deliver to Walton the deed called for in the agreement, and
failed to furnish him an abstract of title to said real estate
showing perfect title to the same in McKinney, although it
was within the power of said McKinney to perfect the title
to said premises and carry out the terms of said contract.
The cross-complaint prayed for specific performance of the
agreement, or, if that be found impossible of performance,
damages for such nonperformance. The cause was tried to
the court at the October, 1906, term, and judgment and decree
entered for the appellant upon the cross-complaint. Subse-
quently a new trial was granted, and the cause retried at the
April, 1907, term, and judgment entered for the appellee for
the immediate possession of the premises described in the com-
plaint upon the payment by the appellee to appellant, within
ten days from the date of the judgment, of the sum of $216.
From this judgment Walton has appealed.

The facts are few, and for the most part uncontroverted.
It is admitted that the agreement set forth in the cross-com-
plaint of Walton was entered into, and that under it Wal-
ton made a cash payment of $500, entered into possession of
the premises, and made valuable improvements thereon. It
further appears that Walton, before the first day of May,
1906, was ready, able and willing to pay the balance of the
purchase price due upon the execution and delivery to him
of the deed called for in the agreement with the abstract of
title showing perfect title to said premises in McKinney, and
demanded of McKinney that he execute and deliver to him
such deed and abstract of title; that thereupon McKinney ten-
dered to Walton a deed to the premises described and set forth
in the agreement, save and except no mention was made
therein of the sixty shares of the Salt River Valley Water
Users' Association, and at the same time tendered an abstract
of title which failed to show a perfect legal and recorded title
to said premises in McKinney; that thereupon Walton refused
to take such title as shown by said abstract to be in McKin-
ney; that after May 1, 1906, McKinney offered to execute and
deliver to Walton a warranty deed to said premises, and to

execute a bond to said Walton securing said title, pending the perfection of the same by McKinney; that Walton thereupon refused said deed and bond, and refused to pay the balance of the purchase price; that on the sixteenth day of July, 1906, McKinney tendered to Walton such warranty deed with the abstract of title showing a release of a mortgage shown by said abstract to be a lien upon said premises, and demanded payment of the remainder of the purchase price. Thereupon Walton refused to accept said abstract and deed, and refused to pay the balance of the purchase price, but thereupon tendered to McKinney the sum of $5,500, and demanded a good and sufficient warranty deed to the premises, together with an abstract of title showing a perfect title in McKinney. McKinney thereupon refused to execute any other or different deed, or furnish any other or different abstract, but offered to return to Walton the $500 paid by him on the purchase price, less the rental value of the premises for the time Walton had been in possession thereof, and demanded possession of the premises. Upon Walton's refusal to comply with the latter demand McKinney brought this suit. It is admitted that at the time suit was brought McKinney did not have a perfect legal title to the premises, in that the abstract showed that the title at one time stood in the name of one D. D. Crabb who, at the time of the purchase of the land in controversy, was a married man, but who, at the time he conveyed the premises to McKinney, was a widower; that the community interest of Crabb's wife descended at her death to two minor children. It further appears that the land in controversy has greatly appreciated in value since the date of the contract. Upon the first trial it was developed that the community interest of Crabb's wife, which descended to her children, was a mere equity of comparatively little value. Upon the discovery of this fact Walton in open court offered to pay the full purchase price of the premises, with interest from July, 1906, and to take such title as McKinney had in the premises. The record also discloses that Walton has made this tender good since that date.

There are a number of assignments of error made by counsel for appellant in their brief. In our view of the case it is unnecessary to consider any but the general assignment, which raises the question whether or not Walton, under the facts in the case, was entitled to a conveyance from McKinney of the premises in controversy upon the payment by him of the

remainder of the purchase price named in the contract. In viewing the contract between McKinney and Walton two things are apparent: First, that time is not of its essence; second, that upon payment by Walton of $500 it became partially performed on his part, and was not therefore wholly executory. It is manifest also that the conduct of Walton in refusing to accept the deed proffered by McKinney, in the face of the concededly defective title, was well within his rights. Only one circumstance could in any event, under the agreement, justify McKinney in not fully performing his agreement, and that would be his inability, through no fault of his, to so perform it. So long as it was within his power to perform, and Walton stood ready, able and willing to do the things required of him, McKinney could not rescind. It is also clear that, so long as he was not in default, Walton had a right to waive any defect in the title, and, upon tender of the balance of the purchase price due McKinney, to lawfully demand the conveyance of the property.

The case is to be distinguished from one where there is an agreement for the sale of land wholly executory, and the vendor tenders a warranty deed, and there is no specific agreement to furnish an abstract of title with the deed showing a good title in the vendor. In such a case, the agreement being unilateral, equity will not decree a specific performance. The refusal by the vendee to accept such a deed will then be regarded as a rescission of the agreement. *Goldthwait* v. *Lynch,* 9 Utah, 186, 33 Pac. 699; *Meidling* v. *Trefz,* 48 N. J. Eq. 639, 23 Atl. 824. Where a vendee, with full knowledge of the facts bearing upon the title of his vendor, declines to accept a warranty deed to the land agreed to be conveyed in a unilateral contract, and refuses to pay the purchase price, he rescinds the agreement, and he cannot thereafter recall his rescission and demand a conveyance from his vendor of such title as the latter may possess. *Riley* v. *Allen,* 71 Kan. 625, 81 Pac. 186. Where there has been no such definite and final election with the full knowledge of the facts on the part of the vendee, and the agreement is one which has been partially performed, the rule is quite otherwise.

The case of *Saldutti* v. *Flynn,* 72 N. J. Eq. 157, 65 Atl. 246, is in point. The facts in that case were that Flynn agreed to convey land free from encumbrance to Saldutti, who at the time the contract was entered into paid part of the purchase price. Flynn tendered to Saldutti a deed, which the

latter refused, because it was not executed by Flynn's wife.
There were negotiations between the parties, pending which
Flynn and his wife conveyed the land to other parties. It
was held that equity would enforce specific performance of
the contract at the suit of Saldutti against Flynn and his
grantees, notwithstanding it appeared that Flynn's wife had
not acknowledged the agreement to sell, and hence was not
bound to convey, and that therefore Flynn had tendered by
his deed all that Saldutti could require of him. In the de-
cision the vice-chancellor used this language: "A vendor is
in equity a trustee for the vendee from the time of the execu-
tion of the agreement. A failure of the vendee to perform
the contract on his part strictly at the time fixed, if the ven-
dor is ready to perform, does not in equity discharge the con-
tract; unless by the contract itself, or circumstances proved
in the case, time is made or has become the essence of the con-
tract, or the delay has made specific performance inequitable."

In *Haffey* v. *Lynch,* 143 N. Y. 241, 38 N. E. 298, in which
a vendee under an agreement for the purchase of land partly
performed by him, and who had declined to accept a con-
veyance tendered by the vendor because of a defect of title
appearing after the contract of sale had been entered into,
but who, upon the trial, had proffered to accept such convey-
ance and pay the full purchase price, the court said: "It is
a general rule in equity that the specific performance of a
contract to convey real estate will not be granted when the
vendor, in consequence of a defect in his title, is unable to
perform. In such cases specific performance is denied be-
cause the court cannot enforce its judgment, and because, also,
it would be oppressive to the vendor. But if the defect in the
title existed at the date of the contract, or was due to some
fault or to some act of the vendor subsequent to the contract,
the court will generally entertain an action for specific per-
formance, and retain jurisdiction for the purpose of awarding
damages for the breach of the contract; . . . and no case can
be found prior to this where an equity court has denied spe-
cific performance because the vendor's title was defective at
the commencement of the action, but valid and perfect at the
time of the trial. In such a case, why should not the vendor
perform? He is able to, and the vendee is entitled to per-
formance, unless some other defense has intervened, and the
court is able to enforce performance. Here the plaintiff was
willing to take such a title as the defendant could convey at

the trial. . . . Equity courts, in awarding relief, generally look at the conditions existing at the close of the trial of the action, and adapt their relief to those conditions. The plaintiff in an equity action, as a general rule, should not be turned out of court on account of any defense interposed to his action, if at the time of the trial the facts are such that if he then commenced his action he would be entitled to the equitable relief sought. If a vendor has no title, or a defective title, to land which he contracts to sell, and subsequently obtains a perfect title, he can be compelled by his vendee to perform his contract. Fry on Specific Performance, 3d ed., 480. And why should the vendor not be compelled to perform if he perfects his title while the action for specific performance is pending? A perfect title by the vendor is no part of the vendee's cause of action, and he is just as much entitled to the equitable relief, and the equity court is just as competent to give it, whether the title of the vendor was perfect before or after the commencement of the action.''

These cases sufficiently illustrate the equitable doctrine applicable to such a case as this at bar. Under the facts as disclosed McKinney was not discharged from the contract when he tendered the deed and offered to repay Walton his cash payment, as he had not fulfilled all that he had agreed to do; and the facts which would excuse him from such performance, if they existed, do not appear to have been known to Walton. It was not until the first trial of the case that Walton became aware of the true state of the title to the land in controversy. When the facts were known to him, he at once offered to accept the deed and pay the full purchase price. He thereupon brought himself squarely within the rule announced in *Haffey* v. *Lynch, supra,* and was entitled to specific performance as prayed for in his cross-complaint.

We are unable to see in what respect the enhancement of the value of the land in controversy has to do with the rights of the parties. No fact is exhibited which indicates that Walton, from motives of speculation, refused to accept the deed from McKinney at the time it was proffered, and no other fact (than that which we have mentioned) appears in the record which would render specific performance at this time inequitable. As said in *Lee* v. *Kirby,* 104 Mass. 420: ''The question of the want of equality and fairness and of the hardness of the contract should, as a general rule, be judged of in relation to the time of the contract, and not by subsequent

events. We do not intend to say that the court will never pay any attention to hardships produced by a change of circumstances; but certainly the general rule is that a mere decline in value since the date of the contract is not to be regarded by the court in cases of this nature.'' We might add to this that the rule would certainly not be different where the property agreed to be sold has, as in this instance, increased in value, and there is no showing that the vendee has delayed payment from motives of speculation. A vendee, under such circumstances, who has made a good bargain, is in equity entitled to the same consideration as if he had made a bad bargain, and is as fully entitled to specific enforcement in the one case as in the other.

As the facts seem to have been fully developed in the court below, we consider that this is a case which calls, not merely for the reversal of the judgment below, but for the entry of judgment in this court, authorized by paragraph 1591 of the Revised Statutes of 1901.

The judgment of the court below will therefore be reversed, and judgment entered in this court that appellee, P. J. McKinney, within thirty days from the entry of judgment herein, duly execute, acknowledge, and deliver to appellant, William Walton, his warranty deed to the premises and property described in the complaint upon the payment by said Walton to said McKinney of the sum of $5,500, with interest thereon at the rate of six per cent per annum from May 1, 1906, to the date of this judgment, and that in case said Walton should refuse, neglect, or decline to make such payment within said date that the appellee, McKinney, have possession of said premises. It is further ordered that the appellant recover of appellee his costs expended by him in this court, and as well in the court below.

DOAN and CAMPBELL, JJ., concur.

NAVE, J.—I do not concur in the reversal of the judgment. I believe the law is soundly expounded in the foregoing opinion, except for some inaccuracies (as I conceive them) in the review of some decisions of other courts. I am unable to deduce from the record in the case the inference of fact that Walton derived information at the first trial disclosing the value of the equity vested in the Crabb infants to be substantially different from that value as viewed in the light of the

abstract of title which accompanied the tendered conveyance. Unless, at the time of the offer to accept such title as McKinney could convey, either the status of the title was different or the information newly imparted to Walton was such as to place the value of such title in a substantially different light from the status or light appearing at the time of McKinney's tender, McKinney may not be compelled to convey, but may recover possession. *Riley* v. *Allen,* 71 Kan. 625, 81 Pac. 186; *Goldthwait* v. *Lynch,* 9 Utah, 186, 33 Pac. 699; *Long* v. *Miller,* 46 Minn. 13, 48 N. W. 409. My dissent being based upon a differing conception of the facts, and not upon a different understanding of the law, it would not be useful to elaborate my opinion.