[Civil No. 2687. Filed March 19, 1928.]

[265 Pac. 84.]

HERMAN E. DeMUND, Appellant, v. RUTH M. BENSON and J. ALEXANDER BENSON, Her Husband, Appellees.

Mr. Henry H. Miller and Messrs. Anderson & Gale, for Appellant.

Mr. I. J. Lipsohn, for Appellees.

ROSS, C. J.—This action was brought by DeMund against the Bensons to collect certain notes, and to foreclose a mortgage given to secure the same, running from defendants to plaintiff.

It appears that on December 5th, 1924, DeMund and the defendants, husband and wife, entered into a conditional contract of sale, by the terms of which plaintiff agreed to sell, and the defendants agreed to purchase, a lot in Fairview addition to Phoenix, for the sum of $1,000, to be paid as follows: First payment of $100 by 30-day note of defendants, and balance at $15 per month. On the eighth day of December a like agreement for another lot in such addition was entered into, the consideration being $1,100. Simultaneously plaintiff executed deeds to defendants, and defendants executed deeds back to plaintiff, and these, together with the sales contract, were escrowed, with the agreement that, if defendants made payments in full, plaintiff's deeds should

be delivered to them, but, if they defaulted, both deeds were to be given back to plaintiff.

Defendants were not able to pay their two $100 notes when they fell due, and thereafter it was mutually agreed to enter into another contract to take the place of the first, and the dispute in this lawsuit is over the terms of the substituted contract. Whether the defendants intended it, or not, the fact is a contract of outright sale of the lots from the plaintiff to the defendants was entered into in writing as of the original dates, December 5 and 8, 1924. Plaintiff executed and delivered to defendants deeds of the property, which were placed of record, and took in payment therefor defendants' notes, secured by mortgages on the property. The defendants failed to pay notes when they became due, and this suit was instituted to collect the notes and foreclose mortgages.

. The substance of defendants' fourth amended answer is that the agreement as to the terms of the substituted contract was that they should take up the two $100 notes by giving two other notes for $280 each, being the amount due on each contract, including the first payment of $100 and installments past due at the time, the balance of $720, and $820, respectively, to be paid in installments as in the original agreements, or in other words, that the substituted contracts were to be and continue conditional ones, first payments to be increased from $100 to $280, and to be made by giving their notes; that the reducing of the verbal agreement thus made to writing was left to plaintiff, and that thereafter plaintiff's agent presented to defendants for their signatures written instruments, stating that "these are the new contracts of sale to replace the former contracts"; "that defendants were very close friends of plaintiff and his agent, . . . and that defendants had great trust and confidence by reason of such

friendship," and because thereof "did sign what they believed, and what was represented to them by plaintiff and his agent, to be the said new contracts of sale," and that their signatures to notes and mortgages sued on were obtained by and through such false representations; that, upon the discovery of the fraud practiced upon them, defendants tendered the property back to plaintiff.

The plaintiff's demurrer to the answer, on the grounds of insufficient facts to constitute a defense, and his motion for judgment on the pleadings, were overruled, and trial before a jury proceeded. To interrogatories put to the jury, they answered that the substituted contracts were to be the same as the originals, except that the promissory notes for the first payments were to be for $280 instead of $100, and that plaintiff's agent represented the written contracts to be similar to the originals; that defendants believed such representations, and, relying on them, signed the notes and mortgages without reading them, and that, because of the friendly relationship existing between defendants and plaintiff's agent, they were justified in relying upon such agent's representations and in signing such instruments without reading them. These findings of the jury were adopted by the court, and formed the basis of a judgment canceling the contracts and the evidences thereof, upon condition that defendants first pay to the plaintiff the sum of $200 and interest, being the amount of their two notes given plaintiff for first payments.

From the order overruling a motion for new trial and from the judgment, the plaintiff has appealed, assigning innumerable errors. We will not undertake to consider these assignments separately, but they present certain propositions, and these, or such of them as seem to demand notice, we will consider.

It is first contended that the court's action during the trial in permitting defendants to amend their answer to conform with the rulings, and in permitting such amendments to conform to the proof, as also in permitting defendants after the case was closed to reopen it and introduce other evidence, had the tendency to impress the jury that the court leaned towards defendants, and was therefore prejudicial.

The record shows that the court was extremely liberal in the respects complained of, but it also appears that it was necessary and in the interests of a full and fair trial of the controversy. We think the court has, and should have, a wide discretion as to trial amendments, and should exercise such discretion liberally wherever and whenever it is necessary or proper to a just disposition of the rights of the litigants. Upon the same principle, it was not error for the court to permit defendants, when their attention was called to it, to supply evidence material to their case, and for that purpose to reopen the case after it was closed. Allowances of both kinds are common in trials, and because in a given case the indulgences to one of the parties are numerous is no indication of partiality to that side, but rather a sign of alertness in supervising and overseeing the litigation, to the end that a just, full and complete trial of the disputes between the parties may be had.

The demurrer to the fourth amended answer and the motion for judgment on the pleadings raise the same question, and that is as to whether the fraud pleaded in the answer, if conceded, is a good defense. If it is, the court rightly overruled the demurrer and the motion for judgment, and proceeded with the trial. We think the allegations of the answer as to fraud in effect is that the parties had verbally agreed on the terms of the contract; that there-

upon plaintiff purported to reduce such verbal contract to writing, but fraudulently misrepresented in the writing the verbal contract, and that defendants, confiding in the plaintiff's agent, signed the notes and mortgages without reading them. It is obvious that defendants were not free from negligence. Ordinary prudence and caution would have required them to read the writing evidencing the substituted contracts. An investigation of the cases shows that the courts are not in accord upon what should be done under such circumstances. There is a line of cases that insists that one affixing his signature to a written instrument is bound thereby, if at the time he signed it he was able to read and understand it, and nothing was done to prevent his doing so. Such cases would clearly deny the sufficiency of the defendants' answer. On the other hand, there is a line of authorities that emphasize more the fraud of the transaction than the negligence of the party affixing his signature without reading the instrument. One of these cases of the latter kind (*Cummins* v. *Cummins*, 24 Hawaii 116) puts it in this way:

"Is it better to encourage negligence in the foolish or fraud in the deceitful? Either course has its obvious dangers, but judicial experience exemplifies that the former is the less objectionable and hampers less the administration of pure justice. The law is not designed to protect the vigilant alone, although it rather favors them, but is intended as a protection to even the foolishly credulous as against the machinations of the designedly wicked."

A very clear statement of the rule excusing negligence in signing instruments without reading them is stated in *Tanton* v. *Martin,* 80 Kan. 22, 101 Pac. 461:

"There is a well-recognized exception to the rule that a party is bound to know the contents of a paper which he signs; and that is where one party procures another to sign a writing by fraudulently

representing that it contains the stipulations agreed upon when in fact it does not and where the party signing relies upon the faith of these representations and is thereby induced to omit the reading of the writing which he signs. It is well settled that a written contract which one party induces another to execute by false representations as to its contents is not enforceable, and the party so defrauded is not precluded from contesting the validity of the contract, by the fact that he failed to read it before attaching his signature. *Deming* v. *Wallace,* 73 Kan. 291, 85 Pac. 139; *Shook* v. *Manufacturing Co.,* 75 Kan. 301, 8 L. R. A. (N. S.) 1043, 89 Pac. 653; [*St. Louis*] *Jewelry Co.* v. *Bennett,* 75 Kan. 743, 90 Pac. 246; *Disney* v. *Jewelry Co.,* 76 Kan. 145, 90 Pac. 782.''

This rule, as stated in 6 R. C. L. 634, is quoted in *Smith* v. *Mosbarger,* 18 Ariz. 19, 156 Pac. 79, and approved in principle.

While we may find fault with the carelessness of the defendants in signing the notes and mortgages without reading them, especially when they were prepared by a person whose interests were antagonistic to theirs, a court of justice could hardly insist upon their performing the contract if, as a matter of fact, the contents of the papers were falsely represented to them, and they signed them because of their belief in the truthfulness of the representations.

We believe that the better rule is that one may avoid a contract for fraud if its contents were actually misrepresented to him, although he signed it without reading it. The facts in this case fall within the rule just stated, and therefore the answer stated, very imperfectly, it is true, a good defense.

The evidence on the issue of fraud was, as might have been expected, in sharp conflict. The jury could have as reasonably decided it one way as the other, as in quantity it was about equal. They gave credence to defendants' story, and we cannot, under the rule that makes the jury the weigher of the evi-

dence, disturb its findings. The trial court also saw the witnesses and heard them testify, and made the jury's findings its own. Thus the jury and the court were in accord on the issue, and we must treat it as settled in favor of defendants.

Complaint is made of the admission of testimony given by Mrs. Benson, to the effect that plaintiff's agent "told her that, if she did not want to keep the property, the agent would resell it for her at a handsome profit within thirty days, and that she could pay for property out of her mother's estate which was yet in probate," but the assignment raising this point fails to direct our attention, either by folio or page, to the testimony of which he complains. A search through the abstract of such witness' testimony discloses that such testimony was either ruled out or not objected to. The assignment does not appear to be sustained by the record.

It is next contended that defendants' tender of the property back to plaintiff was not in legal form. In other words, that defendants did not execute and deliver to the plaintiff, or offer to execute and deliver to him, deeds of property conveying it back to him, nor deliver such deeds to the court to abide its decision, nor tender the cash to plaintiff, or into court, or otherwise, to cover the two $100 notes and interest. If the suit had been one by defendants for rescission of the contract and the cancellation of the notes and mortgages, it doubtless would have been necessary to have made a tender of the kind contended for, unless it was shown that a tender would have been refused, and therefore would have served no purpose. Before the action was brought, according to the testimony of defendants, they offered to pay plaintiff the two $100 notes and turn the property back to him, and plaintiff refused to accept the offer. An actual tender, as we understand the law, is dispensed with, if the party is ready

and willing to perform, but is prevented by the other's declaration that he will not accept performance. The only thing defendants could do after plaintiff refused their proposition and sued them was to submit their contentions to the court and abide its decision. The respective equities of the parties, and it is obvious they both have rights to be protected, was a matter for the determination of the court, and in advance of such determination, the defendants' offer was of necessity general.

This brings us to the question as to whether the judgment entered properly adjusts the respective rights of the parties. We do not think so. It is undisputed that defendants received some rent during the time they held possession of the lots, and, whatever it was, it should have been accounted for to the plaintiff. It is also undisputed that in the substituted contracts they agreed and bound themselves to pay $280 on each of the lots, under a conditional sale, and gave their notes for such payments.

We think the judgment should be modified to require defendants to pay plaintiff $560 and interest, plus any rentals they may have collected for lots, and, as thus modified, affirmed, the plaintiff to recover his costs on appeal.

LOCKWOOD and McALISTER, JJ., concur.