616 P.2d 56

**Ted D. NELSON, Plaintiff–Appellant,**

**v.**

**M. Dalton CANNON, Jr., and Jane Doe Cannon, his wife; J. P. K., Inc., an Arizona Corporation; and Margaritis Enterprises, a limited partnership, Defendants–Appellees.**

**No. 1 CA–CIV 4906.**

Court of Appeals of Arizona,
Division 1, Department A.

March 18, 1980.

Rehearing Denied April 30, 1980.

Review Denied Sept. 11, 1980.

Killian, Legg, Nicholas & Fischer by Charles W. Wirken, Mesa, and Stradling, Yocca, Carlson & Rauth by M. Stephen Coontz, Newport Beach, Cal., for plaintiff-appellant.

Roush, Mori & Welch by Foster G. Mori, Joseph T. Tadano, Phoenix, and Lewis & Roca by Paul G. Ulrich, Patricia K. Norris, Phoenix, for defendants-appellees.

FROEB, Presiding Judge.

This lawsuit is for specific performance of a contract to convey an apartment complex in Phoenix, Arizona. The decision on review is the order of the trial court granting summary judgment in favor of the seller and against the buyer on the ground that there exists no triable issue of fact and the seller is entitled to judgment as a matter of law. We find the trial court erred in this determination and reverse the judgment.

By reason of the basis of our resolution of the appeal, it is necessary to recite only an outline of the facts appearing in the record. Margaritis Enterprises, a limited partnership, (referred to hereafter as "seller") entered into a written contract on April 3, 1978, with Ted D. Nelson (referred to hereafter as "buyer") for the sale of the apartment complex, which provided, among other things, for a purchase price of $6,500,000 payable as follows:

(1) $1,000,000 cash;

(2) $4,200,000 by assumption of existing note payable to Philadelphia Savings Fund Society secured by a first mortgage;

(3) $1,100,000 (approximately) payable to seller over 30 years under a promissory note secured by a deed of trust;

(4) $200,000 payable to two brokers by promissory note to each in the amount of $100,000.

The contract set forth certain time limitations within which the transaction was required to close. For purposes of this appeal, the earliest date on which seller could have required buyer's full compliance with the contract and thus insisted upon close of escrow was on July 16, 1978.

Sometime prior to June 15, 1978, both the seller and buyer learned that the first mortgage prohibited seller from creating or permitting to be created "against the property subject to this mortgage any lien or liens inferior or superior to the lien of this mortgage . . . ." With the possibility of secondary financing in question, the parties then engaged in various communications, the nature, force or effect of which may be the subject of trial later but are not in contention in this appeal. There followed, on June 15, 1978, a letter from seller to buyer stating, among other things, that *there was no longer a binding agreement between them for the sale of the apartment complex.* For purposes of this appeal, we treat this letter as an anticipatory repudiation by the seller of the contract to sell the apartment complex.

The buyer filed a complaint for specific performance of the contract on July 3, 1978. In it he alleged, among other things, that he "has tendered and does hereby tender full performance pursuant to the terms of said contrct and stands ready, willing and able to so perform."

The motion which led to summary judgment was filed by seller on January 25, 1979. It stated: "The sole issue before this court is whether or not [buyer] is able to specifically perform the contract as alleged in his complaint. [Seller] submit[s] that he cannot and that it is impossible for [buyer] to specifically perform the alleged agreement set forth in [buyer's] complaint because of the refusal of the first mortgage holder, Philadelphia Savings Fund Society, to consent to the assumption of the first mortgage and any secondary financing by [buyer] . . . For the foregoing reasons [seller] would submit that [it is] entitled to judgment as a matter of law . . . ."[1]

The buyer responded to the motion by asserting (1) there is a genuine issue of fact as to whether Philadelphia could and would consent to secondary financing, and (2) even if Philadelphia would not consent, buyer waives the provision of the contract relating to secondary financing and *stands ready, willing and able to pay cash* to the existing first mortgage.

The seller replied that (1) there is no genuine issue of fact that Philadelphia would not consent to secondary financing, and (2) buyer could not, as a matter of law, waive the secondary financing provision of the contract and, even if he could, buyer has failed to tender the sum involved.

The trial court granted the motion. In its accompanying "memorandum decision", the court agreed with seller's position regarding the first issue (previously set forth) and stated, as to the second issue:

The plaintiff now alleges that he is willing to waive the requirements of a note secured by deed of trust and to pay cash to the mortgage. Had he done this before the action was commenced to demonstrate that he was indeed "ready, willing and able to so perform", the waiver would have been enforceable. However, the seller cannot equitably be required to wait for an indeterminate period of time to determine whether the buyer will ultimately be successful in effecting a purchase.

On appeal, the parties argue the merits of both issues, but we find that the buyer's position on the second issue is meritorious and defeats the summary judgment. As a consequence, it is unnecessary to discuss the question of whether Philadelphia would consent to secondary financing.[2]

We turn, then, to the controlling issue. The threshold question is a matter of law: Could the buyer legally comply with the contract by tendering cash down to the first mortgage instead of tendering a note secured by a second lien deed of trust? If he could, we then must deal with the question of whether the seller has yet put the buyer

1. It is important to note a crucial distinction at this point. Seller did not seek by the motion to test its legal justification for the June 15, 1978, letter repudiating the contract. That would involve wholly different considerations than are presented in this appeal. As we elaborate in our opinion, the purpose of the motion was to test whether buyer was ready, able and willing to perform the contract, since, if the buyer was not, the remedy of specific performance would not be available and the lawsuit would be ended. Questions relating to seller's repudiation of the contract on June 15, 1978, would never be reached. Thus the issue *in the motion proceedings* was not whether buyer could have performed on June 15, 1978, or some other date. The specific issue was whether buyer could prove that he was ready, willing and able to perform the contract as a predicate to the equitable remedy of specific performance. This distinction is extremely important to the resolution of the appeal in light of seller's assertion that buyer did not tender payment prior to the motion. Actual tender of money to the seller was not required as a condition for this litigation. Buyer's obligation at trial would only be to prove to the satisfaction of the trial court that he was *at that time* ready, willing and able to perform the contract, thereby opening the way to a judgment in his favor ordering specific performance by the seller. Actual tender of buyer's performance of the contract would only thereafter be required in accordance with the orders of the court in its judgment for specific performance.

2. This is not to say that the question is eliminated from the suit for purposes of trial. These motion proceedings by themselves do not foreclose buyer from performing the contract through the means of secondary financing. However, the buyer has not, *thus far*, been forced to an election as to how he will pay for the apartment complex.

to proof that he is ready, willing and able to tender cash.

The terms of the contract, noted previously, entitle buyer to pay $1,100,000 of the purchase price to seller by means of installments over a period of years. Seller argues that this provision is not solely for the benefit of buyer; that it is also for the benefit of the seller; that buyer cannot unilaterally waive it; that to allow him to do so is in effect the creation of a new contract. The trial court disagreed as to this and so do we.

■ A contracting party may waive provisions in a contract which are solely for his benefit. *Lanna v. Greene*, 175 Conn. 453, 399 A.2d 837 (1978); *Doryon v. Salant*, 75 Cal.App.3d 706, 142 Cal.Rptr. 378 (1977); *Spellman v. Dixon*, 256 Cal.App.2d 1, 63 Cal.Rptr. 668 (1967); *Wesley N. Taylor Co. v. Russell*, 194 Cal.App.2d 816, 15 Cal.Rptr. 357 (1961); 17 Am.Jur.2d *Contracts* § 390.

For example, in *Wesley N. Taylor Co. v. Russell, supra*, the agreement between the seller and buyers was contingent upon the buyers being able to obtain a 15–year mortgage. The buyers were able to obtain only a 12–year mortgage, but this was agreeable to them. Nevertheless, the seller refused to perform. The court held the mortgage contingency was for the benefit of the buyers and waivable by them, stating:

> [T]hat the vendor's interest is in securing the purchase price; that the paramount obligation of the respective parties is the payment of the cash and the delivery of title to the property, and that the method of financing is incidental and not of the essence of the contract to convey. 194 Cal.App.2d at 828–829, 15 Cal.Rptr. at 365.

Likewise, in *Doryon v. Salant, supra*, the parties agreed to a purchase price and terms "subject to buyer obtaining a 1st trust deed and note for $52,000 . . . ." The buyers obtained a loan commitment for only $51,000 but signed a supplemental escrow instruction deleting the contingency. The sellers refused to perform and purchasers brought an action for specific performance. Again, the $52,000 loan contingency

was held to be solely for the buyers' benefit and was therefore waivable by them by agreeing to accept a loan in a lesser amount. The court stated:

> Defendants would have had no complaint if plaintiffs had elected to forego financing altogether and to pay the purchase price with their own cash. 75 Cal. App.3d at 712, 142 Cal.Rptr. at 381.

■ Returning to the present case, the only contention raised by seller that the financing provision in question was for its benefit, and thus not waivable by the buyer, relates to income taxation under the Internal Revenue Code. It points to the provision of the code regarding installment sales of real property and to a postulated adverse tax effect of receiving in excess of thirty percent of the purchase price in a given tax year. We recognize that in another situation, such might be the case. However, under the contract here, buyer was entitled to pay "$8071.80 per month *or more* . . . " (emphasis added). Thus under the contract as written, seller was not entitled to limit buyer's payment to that which would satisfy the Internal Revenue Code provision.

Seller next raises two questions which we deal with together. Seller argues that the buyer cannot rely on performance of the contract by paying cash instead of secondary financing because he has not tendered the cash and in any event the offer to tender cash made in the motion proceedings was untimely. The latter point was found controlling by the trial court.

It is here that a clear focus must be placed upon these motion proceedings. The thrust of seller's motion was to persuade the court that a trial would be in vain because buyer would be unable to prove that he was ready, willing and able to comply with the terms of the contract. The seller thus created for itself the duty of showing this in the motion and convincing the court that no facts on this question were in dispute.

■ When the seller repudiated the contract by its letter of June 15, 1978, the

buyer was not required to tender his performance under the contract in order to preserve his right to specifically enforce it. *Ceizyk v. Goar Service & Supply, Inc.*, 21 Ariz.App. 119, 516 P.2d 61 (1973); *cf. Kammert Bros. Enterprises, Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 428 P.2d 678 (1967); Corbin on Contracts, Vol. 4, § 977. This is in keeping with the notion that the law does not require one to do a futile act. *Schmitt v. Sapp*, 71 Ariz. 48, 223 P.2d 403 (1950); *DeMund v. Benson*, 33 Ariz. 374, 265 P. 84 (1928). Thus the buyer's recourse was to bring suit for specific performance. He had no obligation to tender money to the seller because the seller had repudiated the contract. As the dates will indicate, suit for specific performance was brought well in advance of the earliest date for performance by the buyer under the contract.

The complaint for specific performance contained the allegation, as previously quoted, that the buyer stood ready, willing and able to perform. This well settled condition precedent must be satisfied in order for the buyer to be entitled to the remedy of specific performance. *Ceizyk v. Goar Service & Supply, Inc.*

We come then to the question of *when*, in this contract, the buyer must satisfy the court that he is, in fact, ready, willing and able. To be sure, it is not at the time of filing the complaint. It is, however, logically required before the court rules on the merits of the case.[3] Here, the seller sought to force this showing in advance of trial when it filed its motion for summary judgment. In its ruling, the trial court erred in stating that the buyer was required to demonstrate that he was ready, willing and able *before* the action was commenced.

It is next necessary to look at where the burden lay in the motion proceedings. It is well settled that on a motion for summary judgment, the moving party has the burden to show that there is no genuine issue as to any material fact and that the moving party is entitled to a judg-

ment as a matter of law. That rule is applicable here regardless of whether the moving party or his opponent would, *at trial*, have the burden of proof. *City of Phoenix v. Space Data Corporation*, 111 Ariz. 528, 534 P.2d 428 (1975); *Lujan v. MacMurtrie*, 94 Ariz. 273, 383 P.2d 187 (1963). It is clear, then, that *for the motion* the seller had the burden of showing the buyer was *not* ready, willing and able to perform under the contract and there was no issue of fact. It is here that seller's position on the motion fails.

Seller argued in the opening memorandum of the motion that buyer could not obtain consent from Philadelphia for secondary financing, relying upon certain factual materials in the record. Buyer responded by contending (1) that seller had failed to make a sufficient factual showing that Philadelphia would not consent and (2) that, even assuming lack of consent by Philadelphia, such a fact would not compel the granting of summary judgment because buyer is free to waive the benefit of secondary financing and pay cash to the first mortgage instead. In other words, the buyer stated an alternative means by which he could comply with the contract. The reply of seller reiterated its position on the secondary financing issue and responded to buyer's argument relating to performance of the contract by paying cash to mortgage.

It is true that buyer had not previously introduced the cash to mortgage concept into the lawsuit, but previously there had been nothing to require him to do so. The complaint alleged buyer was ready, willing and able to perform the contract. The rules of pleading do not require buyer to allege details of ways in which he can satisfy the terms of the contract. When seller filed its motion for summary judgment it was the seller's initial burden to show that buyer was *not* ready, willing and able. Then, and only then, would any obligation shift to buyer to show that the contract could be performed by paying cash to the

---

**3.** We do not deal here with any question relating to *how* the buyer proves this, i.e., by actual

tender of money into court, by affidavit, or other showing.

first mortgage. The buyer did this in his response to the motion.

■ The seller's reply memorandum met the buyer's cash to mortgage argument, *not by demonstrating that buyer was unable to raise the necessary cash*, but on the ground that the buyer could not legally perform the contract by paying cash to mortgage. We have dealt earlier with this contention and found that it lacks merit. Additionally, the seller argued that the buyer had not tendered the cash. We also dealt earlier with this contention and found that the buyer was not required to tender cash at this point. *It was the seller's burden in the motion to make an initial showing that buyer was unable to pay cash.* No such showing was attempted or made.

We hold, therefore, that the motion for summary judgment should have been denied. The moving party's burden is to show that there is no issue requiring a trial. One of the issues in an action for specific performance is whether the buyer is ready, willing and able to perform. The net result of the motion documents in this case is to leave open for proof at trial that buyer is, in fact, ready, willing and able to perform, one way or the other, his obligations under the contract when they are due.

The judgment is reversed and the case remanded to the trial court for further proceedings.

O'CONNOR, J., concurs.

DONOFRIO, Judge, dissenting.

I respectfully disagree with the conclusion of the majority that the trial court erred in granting summary judgment in this case.

Several additional facts are necessary to a full perspective of the case:

1. By the terms of the agreement between the parties, closing was to be no later than 90 days after the opening of escrow unless extended for an additional 90 days by purchaser paying an additional $10,-000.00 into escrow. The additional $10,-000.00 was to be nonrefundable.

2. Time was of the essence of the contract.

3. The escrow was opened on April 19, 1978, so that closing should have taken place on or before July 18 and purchaser did not extend the time for closing as provided by the agreement.

4. Purchaser did not offer to tender cash in lieu of second deed of trust financing on or before July 18, 1978.

5. Sellers first moved for summary judgment in September 1978 basing their motion on a letter from the Philadelphia Savings Fund Society to a Washington lawyer for one of the appellees. This letter stated that the savings institution would not consent to a secured secondary financing. Purchaser opposed the motion on the grounds that the letter was hearsay. There was an affidavit of the appellant attached to his response in opposition to the motion for summary judgment asserting his capability to make the various necessary payments on the note provided for in the contract, to be secured by a second deed of trust. Appellant's response asserted his right to pay cash down to the first mortgage in the following terms:

The plaintiff in the instant case *remains free* to waive the benefit of the second deed of trust provision and to pay cash to mortgage instead. (Emphasis supplied).

Seller's motion for summary judgment was denied on the sole basis that it had not shown by *admissible* evidence that the Philadelphia Savings Fund Society would not consent to a second lien on the property.

6. Appellant admitted when his deposition was taken on September 21, 1978 that he had not at that time made application to the Philadelphia Savings Bank for its approval to put a second lien on the property.

7. Appellant subsequently responded to an interrogatory by appellees by attaching a letter from Philadelphia Savings Fund Society to appellant's California counsel stating that Philadelphia Savings Fund Society would not consent to a second deed of trust. Appellant referred to the letter without evidentiary qualification and stated that it "speaks for itself."

8. Based upon the response to the interrogatory and the foregoing letter attached to the answers, seller again moved for summary judgment. It was in response to this motion that appellant finally verbally "waived" the second mortgage financing provision and stated a willingness and readiness as well as ability to pay cash in lieu of obtaining financing secured by second deed of trust. No cash has ever been tendered.

I wholly agree with the majority that under the terms of this particular agreement the appellant had an absolute right to tender cash all the way down to the first mortgage rather than executing a note secured by a second deed of trust. I also recognize that the appellees prematurely declared the agreement unenforceable, thus reasonably requiring appellant to institute the specific performance suit if he chose to and could perform. I further recognize the principle which excuses the necessity of tender in appropriate circumstances, see *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946), and the existence of authorities holding under appropriate circumstances that an actual tender may sometimes be sufficient if made during the course of litigation. *See* 71 Am. Jur.2d, *Specific Performance*, Section 66 (1975). I think, however, that the record negates the contemporaneous coexistence of readiness, willingness and ability and I further believe that a decree of specific performance under the facts of this case would be contrary to the manifest intention of the parties expressed in their agreement.

Setting aside for the moment the issue of the admissibility of the letter from the Philadelphia Savings Fund Society to appellant's California counsel, that letter clearly established appellant's lack of ability to finance the deferred balance by a note secured by second deed of trust. The record clearly establishes that the savings bank's authorization for secondary financing was necessary and no reasonable inference can be drawn that an approval might have been forthcoming earlier at the time set for closing. Appellant's response to appellees' first motion for summary judgment clearly indicates that while appellant had considered the possibility of tendering cash all the way down to the first mortgage, he was withholding either a tender or a manifestation of such willingness at that time. In other words, if appellant "remained free" to make such a tender, the necessary implication is that he had not made such a tender and was not making such a tender at that time. Appellant sought, in effect, to preserve an option to come up with cash to the mortgage in the event that the savings bank could not, in time, be persuaded to approve a second deed of trust.

The remedy of specific performance is available as a matter of right in an appropriate case. It is, however, an equitable remedy designed for the diligent but not the speculative. *See, e.g., Walton v. McKinney*, 11 Ariz. 385, 94 P. 1122 (1908), affirmed 12 Ariz. 207, 100 P. 471 (1909). While I do not agree with the trial judge that appellant was required to make a cash–to–mortgage tender *prior* to filing suit, I think appellant was at the very least required by a fair interpretation of the agreement to declare his willingness to perform the contract in this manner at the time scheduled for closing. The record affirmatively indicates, however, that appellant was merely attempting to preserve his options in this regard up until the time of responding to appellees' second motion for summary judgment. There was no willingness manifested to tender cash prior to that time.

It seems to me that if a decree of specific performance is held appropriate under circumstances such as these, speculative litigation is encouraged, and that in a rapidly inflating real estate market a purchaser in a position analogous to appellant's may find it possible to trade upon an increase in market value to finance a purchase prior to the end of litigation when he could not meet specified conditions at the commencement of litigation, all in the face of a contract such as this one which made time of the essence and which contained very specific provisions as to when closing must take place. I am unwilling to conclude that either appellees' letter of June 25 or the

fact that appellant filed suit prior to the scheduled closing date or the principle excusing the necessity of tender in appropriate circumstances result in an increase in appellant's contractual rights at the expense of appellees' rights. I do not believe that the pendency of litigation initiated by the purchaser should allow the purchaser to "gain time" in a specific performance suit.

The rule excusing actual tender is grounded on the premise that an actual tender would be refused, making the tender a futile act. *See Shreeve v. Greer,* supra. Its application in this case seems questionable in the first instance because the performance contemplated by the parties in their contract was a secured note, not a full cash payoff down to the first mortgage. While the payment of cash may not have been a substituted performance strictly speaking, it was significantly different than that provided in the agreement. In any event, if an offer to tender is to be held the equivalent of an actual tender for the purpose of maintaining a specific performance suit, there must logically be nothing contingent about the offer to tender. Here, again, the record shows an absence of ability to finance by secured note and merely an attempt to reserve the right to pay cash down to the first mortgage.

As to the question of admissibility of the letter from the savings bank to appellant's California counsel, had appellant merely paraphrased the contents of the letter in answer to appellees' interrogatory as he would have had to do in order to be fairly responsive to the interrogatory, there would have been no hearsay objection. Instead, appellant incorporated the letter by reference into his answers without evidentiary or other qualification, stating merely that it "speaks for itself." Under those circumstances, I consider appellant estopped to object to appellees' present use of the letter on a motion for summary judgment. *Cf. Adams v. Bear,* 87 Ariz. 288, 350 P.2d 751 (1960). Alternatively, I believe that the letter was admissible notwithstanding appellant's hearsay objection by reason of Rule 803(24) of the Rules of Evidence, 17A A.R.S. set forth in the margin.[4] The letter meets the criteria set forth in the rule.

For the foregoing reasons, I would affirm the judgment of the trial court.

---

4. Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.