[Civ. No. 16105. Second Dist., Div. One. Apr. 19, 1948.]

CARL F. ISAACSON et al., Appellants, v. G. D. ROBERT-SON & CO., INC., et al., Respondents.

Ernest W. Pitney and Robert M. Newell for Appellants.

Chandler & Wright for Respondents.

WHITE, J.—Plaintiffs brought an action for specific performance of a contract for the sale of real estate. After trial before the court upon an agreed statement of facts, judgment was entered for the defendants, from which judgment plaintiffs prosecute this appeal. The sole question presented is whether certain provisions for termination of the contract were for the benefit of plaintiff purchasers alone and could be waived by them, or whether such provisions were for the benefit of the sellers as well.

The facts are as follows:

Defendant Title Insurance & Trust Company, as trustee, was the owner of the property in question, a vacant lot on Crenshaw Boulevard in Los Angeles, and also owned as such trustee, adjacent lots in the block on Crenshaw Boulevard between 39th Street and Coliseum Place. Defendant G. D. Robertson & Company, Incorporated, was the exclusive agent for the property. On May 4, 1945, plaintiffs, husband and wife, delivered a cashier's check for $4,320, payable to Title Insurance & Trust Company, to an employee of the agent, G. D. Robertson & Company, Incorporated, and received a "deposit receipt" reading as follows:

"May 4th, 1945

"Received from Carl F. and Hazel K. Isaacson the sum of $4,320.00 (Four Thousand Three Hundred Twenty Dollars

and no/100), issued in the name of the Title Insurance and Trust Company, down payment on Lot 15, tract 12120.

"The total purchase price of this lot is $21,600.00 (Twenty One Thousand Six Hundred Dollars and no/100). The balance is to be paid at the rate of $100.00 or more per month, due and payable in five years.

"Sales agreement will be given in lieu of this deposit receipt.

G. D. ROBERTSON & CO.,
By, T. F. DORAN."

A few days after the execution of the deposit receipt, the following language was indorsed thereon by the agent, with the knowledge and approval of plaintiffs: "This sale has been made subject to Lot 15 Tract 12120 being zoned for business. T.F.D. G. D. ROBERTSON & CO."

On August 17, 1945, Title Insurance & Trust Company transmitted to plaintiffs a "Sales Agreement and Deposit Receipt" and an "Agreement of Sale," with the request that if the documents were satisfactory the plaintiffs execute and return them, whereupon the title company would forward the "Sales Agreement and Deposit Receipt" for execution by the agent and would return to plaintiffs a copy of the "Agreement of Sale" after its execution by the title company. Plaintiffs executed and returned the documents, and the agent executed the "Sales Agreement and Deposit Receipt," but the title company never executed the "Agreement of Sale."

"The Sales Agreement and Deposit Receipt" executed by plaintiffs and defendant agent, and dated May 5, 1945, contained the following provisions:

"2. By their written acceptance of this sales agreement and deposit receipt, which acceptance shall be in duplicate, purchasers acknowledge that they enter into this agreement with the knowledge that the above described real property is now zoned 'RDO', (meaning subject to a Los Angeles residence zoning ordinance) but purchasers are desirous of having the property rezoned into 'C-1' (business) or its equivalent. The purchasers are also aware of the fact that certain municipal authorities for the City of Los Angeles have prepared and are preparing new zoning maps covering property in the City of Los Angeles, and contemplate enacting certain zoning ordinances in connection therewith. The purchasers are also aware of the fact that the maps which are now in the course of being prepared include at the present time a proposal for the rezoning of the property hereinabove de-

scribed from its present zoning of 'RDO' to zone 'C-1' or its equivalent.

"3. In view of the facts above set forth with reference to such zoning procedure, and in view of the uncertainties which exist in connection therewith, it is understood and agreed that in the event the above described property has not definitely been zoned 'C-1' or its equivalent by the proper municipal authorities of the City of Los Angeles, through a valid, effective ordinance duly and regularly adopted by the City Council of the City of Los Angeles as provided by law, within six (6) months from the date hereof, this agreement shall ipso facto cease and terminate, in which event neither party shall be under any further obligation to the other hereunder, excepting that G. D. Robertson & Company shall refund to purchasers any amounts theretofore paid to G. D. Robertson & Company by said purchasers, including the sum of $4,320.00 heretofore paid as above set forth.

"5. In the event this agreement is not terminated upon the expiration of six months from the date hereof as hereinabove provided, the Title Insurance and Trust Company will, upon the expiration of said six months period, issue to the purchasers, a contract purchase agreement in form substantially as set forth upon the document attached hereto, made a part hereof and marked exhibit A, and purchasers agree that if this agreement is not terminated as hereinabove provided within six months from the date hereof, that upon presentation of such contract purchase agreement they will execute the same and fulfill the terms hereof, in default of which, this agreement shall terminate and be of no further force or effect, and neither party hereto shall be under any further obligation one to the other."

The six months' period referred to in the above-quoted paragraph 3 expired November 5, 1945, and on that date the property had not been rezoned. In October, 1945, plaintiffs advised defendants that they were satisfied with the zoning as it stood and requested that the title company execute the "Agreement of Sale." This defendants declined to do, and on November 9, 1945, the agent returned to plaintiffs the cashier's check for $4,320 theretofore deposited by them, advising plaintiffs that the contract "ipso facto terminated upon the expiration of six months from May 5, 1945." Plaintiffs thereupon commenced the present action.

Appellants submit that the judgment should be reversed upon the grounds (1) that the termination clause was inserted

in the contract for the benefit of the vendees, who expressly waived its provisions, thereby continuing the contract in effect; (2) that a vendee may compel a vendor to convey such title as he may have, though it be less than that contracted for; (3) that the title company, by transmitting the "Sales Agreement and Deposit Receipt" and "Agreement of Sale" on August 17 and requesting their execution by the vendees, made an offer of a new contract which was accepted; and (4) that one who has been offered all the benefits he bargained for under a contract cannot withhold his own defective performance if such performance is acceptable to the other party.

██ It is, of course, well settled that a contracting party may waive provisions placed in a contract solely for his benefit. (25 Cal.Jur. 929.) Appellants stress the language in paragraph 2 above quoted that "purchasers are desirous of having the property rezoned into 'C-1' or its equivalent." Opposed to the conclusion that might be drawn from these words alone, however, is the language used in the ensuing paragraph to the effect that unless the property be rezoned within six months the agreement should terminate "ipso facto." The provisions of the agreement are clear and explicit, leaving no room for interpretation, that upon the expiration of six months, if rezoning had not been accomplished, it should terminate automatically, and not at the option of either party. And it is further clear, from paragraph 5 of the agreement, that the occurrence of the event, to wit, rezoning within six months, was a condition precedent to the issuance by the title company of a "contract purchase agreement." It would seem reasonable to assume that if the rezoning provisions were for the purchasers' sole benefit the agreement would have provided for termination at their option.

██ In interpreting a contract, the whole is to be taken together, so as to give effect to every part, if reasonably practicable (Civ. Code, § 1641), and particular clauses are subordinate to the general intent (Civ. Code, § 1650). In considering the agreement here in question we find, in addition to the paragraphs hereinabove quoted, that paragraph 6 provides that if the condition of rezoning be met, the purchasers will agree with the owners of other properties fronting on Crenshaw Boulevard in the same block to limit the use of the lots to business buildings, to fix the depth of the buildings on the respective lots, and in paragraph 7, to lease the vacant portions of such lots to a nonprofit corporation, which corpora-

tion would improve such vacant area with alleys and sidewalks and parking areas for the benefit of all the lot owners in the block, the various owners to contribute to the cost of such improvements and the expenses of the nonprofit corporation. It thus appears that the sellers contemplated a uniform development of the block in which this lot was situated, and that such development could proceed only if the area was rezoned. This is further borne out by the recitals in paragraph 3 that in view of the "uncertainties" in connection with the zoning the agreement should terminate "ipso facto" if rezoning was not accomplished within six months.

Appellants seek to draw a parallel between the situation here and those cases in which the vendee under a contract of sale can compel the vendor to convey such title as he has, even though that title be defective. But there is a clear distinction between those cases and the case at bar. There is no question here of defective title. The vendor stands upon the terms of the agreement by which it was not required to convey anything except in the event rezoning took place within the specified period.

Appellants urge that the title company's letter of transmittal of August 17, 1945, was an offer of a new contract which was accepted by appellants. The letter of the title company contained this language: "If the Sales Agreement and Deposit Receipt (1) and Agreement of Sale (2) are satisfactory to you, you will please have the signature of yourself and wife affixed to each of the documents, in duplicate, and return them to us so that we may forward the Sales Agreement and Deposit Receipt (1) to the G. D. Robertson & Company and this Company execute the Agreement of Sale (2) and return a duly executed copy of the Agreement of Sale (2) to you after it has been signed by this Company. The G. D. Robertson & Company will hand you an executed copy of the Sales Agreement and Deposit Receipt (1) after they have signed it." Appellants' argument is that by tendering the "Agreement of Sale" and requesting its execution by the purchasers before the expiration of the six months' period the title company offered to enter into a binding contract of sale without regard to the zoning conditions, which contract was accepted by the purchasers when they signed and returned it. It is obvious, however, that such a result was not intended by any of the parties, for then there would be no reason for preparing and executing the "Sales Agreement and Deposit

Receipt." The purchasers did not commence the monthly payments which would be due on such a theory.

Taking into consideration the whole of the contract now before us, giving effect to every part thereof, so far as reasonably practicable, and remembering the object which the document as a whole was meant to secure, as disclosed by the record, we are satisfied that the "ipso facto" termination clause was not intended to be solely for the benefit of appellants. Such being the case, it could not be waived by them alone.

The conclusions at which we have arrived are decisive of all questions presented by this appeal, including those raised for the first time by appellants in their reply brief.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 7, 1948, and appellants' petition for a hearing by the Supreme Court was denied June 10, 1948.