[Civ. No. 25207. Second Dist., Div. Two. Aug. 17, 1961.]

WESLEY N. TAYLOR COMPANY (a Corporation) et al., Respondents, v. BARNETT RUSSELL et al., Appellants.

[Civ. No. 25216. Second Dist, Div. Two. Aug. 17, 1961.]

CORBETT ENTERPRISES, INC. (a Corporation), Respondent, v. BARNETT RUSSELL et al., Appellants.

Joseph Lewis, Max Sisenwein and Warren M. Stanton for Appellants.

Henry T. Taecker, Jr., W. A. Perilmuter and Charles A. Price for Respondents.

ASHBURN, J.—These appeals are from judgments for plaintiffs in two consolidated actions arising out of the failure to perform a contract for the sale of real property. In L. A. 25216 plaintiff Corbett Enterprises, Inc., as vendee, sought specific performance of said contract against defendants, as vendors, which relief the trial court granted. In L. A. 25207, Wesley M. Taylor Company, a corporation, and Stanley J. Beligan, sued defendants for real estate commissions as brokers involved in the sale to Corbett and recovered judgment of $5,500.

## THE FACTS

On January 26, 1959, a deposit receipt was executed by the buyer, the sellers and the broker, which, with the buyer's

deposit of $2,000, was taken to the Bank of America on January 28th and an escrow opened. Escrow instructions were signed by the buyer and sellers at that time, these instructions containing substantially the same provisions as the deposit receipt.

The deposit receipt acknowledges the deposit of $2,000 upon a "purchase price of One Hundred and Twenty Thousand & 00/100 ($120,000.00) Dollars. The balance of the purchase price is to be placed in Escrow . . . within 30 days from the date hereof, as follows, to-wit: Cash $45,000, incl. above deposit. 1. Buyer to obtain new 1st trust deed in the amount of $50,000, subject to certain conditions as listed on the reverse side of this offer. 2. Seller shall carry back a second trust deed in the amount of $25,000 payable at the rate of $250.00 per month, or more, including interest at the rate of 6%, until paid. 3. This offer is subject to all of the conditions & reservations listed on the reverse side hereof, said conditions & restrictions being a part of this offer." The following provision appears on the reverse side of the deposit receipt and also in the escrow instructions: "It is understood and agreed between the parties hereto, that this contract [word 'escrow' used in instructions] is contingent upon the purchaser being able to obtain a first trust deed on the premises in the amount of $50,000, payable in equal monthly payments amortized over a period of 15 years, such payments to include interest at not more than 6%. Should the purchaser be unable to obtain such loan prior to 15 days of the date set for the close of escrow, this contract shall thereupon become null and void and all monies returned to the purchaser."

Paragraph 7 of the deposit receipt provides: "Time is the essence of this contract; but the time for any act required to be done may be extended not longer than thirty days by the undersigned agent." Pursuant to this authority, on February 12 the broker extended to March 12 the time limit for obtaining the $50,000 loan and for the closing of the escrow.

On February 13 appellants called at the bank, at which time they examined the file. While in the bank Dr. Russell heard a telephone conversation between the escrow officer and another person who was identified to him as a savings and loan association, and at that time heard that a commitment had been made for a $50,000 loan at 6 per cent for a 12-year period. Appellants promptly went home, prepared and posted on that same day a letter to the escrow holder canceling the escrow for the declared reason that "the failure of the pur-

chaser, Corbett Enterprises, Inc., to obtain the specified loan at the specified time automatically voids the contract in the escrow agreement.'' This is the only notice of cancellation given by appellants and was received by the bank on February 16. Copies of it were received by the broker and by respondent but not until February 14.

On February 13 respondent, who then had no knowledge of said notice of cancellation, personally delivered to the escrow holder a notice that ''the contingency regarding the $50,000.00 first trust deed is hereby cancelled.'' The loan for 12 years had been approved on February 13, and on February 24 the escrow holder received written notice from the Western Escrow Company of the commitment of the Southwest Savings and Loan Association to make said $50,000 loan. Demand was made upon appellants to comply with the terms of the escrow, but they elected to stand upon their cancellation. They also refused to release any part of the $45,000 then on deposit.

## The Specific Performance Action—No. 25216

Beset by doubt as to the finality and appealability of the specific performance judgment we invited counsel to submit authorities upon the point. This they have done, respondent arguing that the judgment is interlocutory and appellants that it is final and appealable. After careful consideration of the authorities we have concluded that respondent's position upon this matter is correct.

The judgment is designated on its face as ''Interlocutory Judgment,'' the word interlocutory being in handwriting and judgment in typing. It concludes with the following statement which presumably is in the handwriting of the trial judge: ''[T]he court specifically retains jurisdiction of this action until complete disposition of the obligations and rights of the parties in the action and under the agreements have been settled.'' Of course neither of these indicia is conclusive (*Bauer* v. *Bauer*, 38 Cal.App.2d 309, 316 [100 P.2d 1070, 101 P.2d 1117]; *Lyon* v. *Goss*, 19 Cal.2d 659, 669 [123 P.2d 11]), but the terms of the judgment itself seem so. It first declares that the agreement be specifically performed and that defendants within 45 days after entry of judgment execute a deed to plaintiff covering the property covered by the agreement and deliver same into escrow, failing which the clerk of the court is directed to execute such a deed and deliver it into escrow Number 381-1929 in the Crenshaw-Stocker Branch of Bank of America National Trust and Savings Association. Plaintiff is ordered within said 45 days to have in the escrow

for the benefit of defendants the sum of $95,000, a portion of which is to be represented by a particularly described first trust deed for $50,000, also a second trust deed for $25,000. Then it is provided, in paragraph V: "That it be referred to Eugene Fink, C.P.A., as Referee, to take and state an account of all rents, issues and profits of the said premises, which have accrued between March 30th, 1959, and the date of entry of this judgment, together with all legitimate expenditures between said dates in the following manner." Subparagraph (a) requires the referee to ascertain and report all rents, revenues, issues, income and other considerations received and collected by defendants or which should have been realized within the specified period, and that defendants be charged with the same. Subparagraph (b) requires the referee to ascertain and report the amount of money reasonably and necessarily expended during said period for taxes, assessments, water rents, fire rent (*sic*), plate glass and accident insurance premiums and necessary repairs, and to credit the same to defendants. Subparagraph (c) directs the referee to ascertain and report to the court the amount found to be due to plaintiff from defendants. Subparagraph (d) says that upon filing of the report within 35 days from entry of judgment plaintiff shall recover said amount from defendants and have personal judgment therefor; that before filing of same copies of the report shall be served upon the respective parties who shall have 10 days thereafter within which to file objections to same "and that a hearing upon the said objections, if any, to the Referee's report shall be held by the Court." Subparagraph (e) orders defendants to turn over to the referee within five days after entry of judgment all leases, insurance policies, books, accounts and records, kept by defendants which pertain to the said property. Paragraph VI directs the escrow clerk upon "the expiration of forty-five days from the date of this Judgment, or upon the entry by the Court of its judgment as to the amounts found due to the plaintiff because of the rents, issues and profits received from the said premises by the defendants between March 31, 1959, and the date of entry of this Judgment whichever occurs last, proceed to close said escrow"; it then adds: "[H]owever, the Escrow Clerk shall deduct from the said amount of money payable to the defendants the sum of money found to be due to the plaintiff from the defendants by the Court because of said rents, issues and profits, and the said sum shall be paid by the Escrow Clerk to the plaintiff herein."

This judgment plainly requires that the plaintiff shall have credit upon its $95,000 escrow deposit for the net amount found due it as fixed after court hearing and rendition of judgment "as to the amounts found due to the plaintiff."

The recognized general standard for determining whether a judgment is interlocutory or final is stated in *Lyon* v. *Goss, supra,* 19 Cal.2d 659, 670, as follows: "As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." This language is repeated in *Bakewell* v. *Bakewell,* 21 Cal.2d 224, 227 [130 P.2d 975]. The instant judgment states that plaintiff is to pay into the escrow $95,000, of which $20,000 is to be cash less credit initially established by the accounting but effectuated through subsequent judgment of the court, one rendered only after notice and hearing upon any objections to the referee's report. This surely seems to fall within the phrase, "anything further in the nature of judicial action on the part of the court . . . essential to a final determination of the rights of the parties," and not merely ascertainment of "the fact of compliance or noncompliance with the terms of the first decree." Indeed it requires further judicial action to render those terms specific in the one vital respect of how much plaintiff owes defendants for their deed.

Appellant relies upon *Zappettini* v. *Buckles,* 167 Cal. 27, 32 [138 P. 696]; *Olds* v. *Thorington,* 47 Cal.App. 355 [190 P. 496]; *Bauer* v. *Bauer, supra,* 38 Cal.App.2d 309; *Brown* v. *Memorial Nat. Home Foundation,* 158 Cal.App.2d 448 [322 P.2d 600, 72 A.L.R.2d 997], and *Prince* v. *Harting,* 177 Cal. App.2d 720 [2 Cal.Rptr. 545]. This case is controlled, however, by *Gunder* v. *Gunder,* 208 Cal. 559, 561 [282 P. 794]; *Middleton* v. *Finney,* 214 Cal. 523, 525 [6 P.2d 938, 78 A.L.R. 1104]; *Di Blasi* v. *Di Blasi,* 209 Cal. 753, 754 [290 P. 7], and similar cases. They hold that a judgment which directs an accounting for the purpose of settling the rights and obligations of the parties toward each other is interlocutory only.

In *Gunder, supra,* it is said at page 561: "[W]e are persuaded from an examination of the authorities that the rule adopted by the courts of this state and applicable to the

present case is based on the desirability of subjecting the parties to but one appeal at the determination of the entire controversy between them [citations], and is stated in *Pomper* v. *Superior Court*, 191 Cal. 494, at page 496 [216 P. 577], as follows: 'The general rule is that where a decree is made fixing the liability and rights of the parties which refers the case to a master or subordinate tribunal for a judicial purpose, such, for instance, as the statement of an account, upon which a further decree is to be entered, the decree is not final [citations].'

"It is apparent upon the showing made in this case that the judgment is not and was not intended by the court to be a final determination of the controversy in the trial court but that final judgment as to the issues adjudicated was reserved by the court to be entered upon the submission of the referee's report, which would then be subject to 'the court's approval,' and at which time the court would also render its 'final judgment in favor of said plaintiff and against said defendant in such amount as the court may find that the plaintiff is entitled to'; and that the appeal should therefore be dismissed."

*Middleton* v. *Finney, supra,* says at page 525: "It is true that certain issues of fact and of law were declared to be settled in the first decree; and it may well be that these were all the 'substantial' or 'material' issues in the case. There remained only the necessity of ascertaining the amounts of money to be paid pursuant to the decree determining the proportional interest of each party. But this had to be done, and until done, the case before the court was not concluded. It involved, to be sure, a mere matter of arithmetic, but the computations were subject to the approval of the court and were to be incorporated, if approved, in a further judgment. A *judicial act* remained to be done. Under these circumstances, the case comes clearly within the language of *Gunder* v. *Gunder*, 208 Cal. 559, 561 [282 P. 794, 795]." Here follows the quotation from Gunder just set forth herein.

*Hollar* v. *Saline Products, Inc.*, 3 Cal.2d 80, 81 [43 P.2d 273] : "The decision in the Gunder case has been consistently followed by this court and by the District Court of Appeal. (*Di Blasi* v. *Di Blasi*, 209 Cal. 753 [209 P. 7] ; *Middleton* v. *Finney*, 214 Cal. 523 [6 P.2d 938] ; *McFarland* v. *Mott*, 123 Cal.App. 79 [11 P.2d 18] ; *Diller* v. *Superior Court*, 125 Cal.App. 554 [13 P.2d 988] ; *Security-First Nat. Bank* v. *Superior Court*, 132 Cal.App. 683 [23 P.2d 1055].) Prior

to the decision in the *Gunder* case, *supra,* there had existed considerable confusion as to the final effect of a judgment fixing the liability and rights of the parties, but referring the cause to a master or subordinate tribunal for a judicial purpose, such, for instance, as the statement of an account upon which a further decree was to be entered. The court, in its decision in the *Gunder* case, squarely held that such a judgment is not final. In the *Di Blasi* case, *supra,* this court affirmed the ruling in the *Gunder* case and said (p. 754) that an earlier case (*Zappettini* v. *Buckles,* 167 Cal. 27 [128 P. 696]) might be distinguished 'but even if this were not so, said case would have to be considered as modified to conform to the holdings' referred to, i.e., the *Gunder* case.''

Appellants' reliance upon *Zappettini* is misplaced. There was no reference or order for an accounting in the judgment which was there held final. It is distinguished in *Gunder, supra,* at page 561, upon the ground that it did not involve a reference for an accounting but ordered a sale of the property and specified the distribution to be made of the proceeds. *Middleton, supra,* at page 526 of 214 Cal. makes the same distinction and, as shown above, *Di Blasi, supra,* at page 754, referring to the Gunder and other cases says: ''The case of *Zappettini* v. *Buckles,* 167 Cal. 27 [128 P. 696], may be distinguished from the case at bar, but even if this were not so, said case would have to be considered as modified to conform to the holdings above referred to.''

Appellants' cited case of *Brown* v. *Memorial Nat. Home Foundation, supra,* 158 Cal.App.2d 448, 453, though it places much emphasis on the Zappettini opinion, is distinguishable upon its facts as is shown by the following quotation from page 455: ''Memorial has been deprived of all its assets. It has been removed as trustee. All essential determinations have been made with reference to the terms of the trust, its purposes and its beneficiaries. The appointment of a new trustee will in no wise affect the substantive rights of appellants. The sole purpose of the accounting is to insure full and complete performance of the provisions of the judgment which require Memorial to surrender all of the trust assets.'' True, the opinion emphasizes in italics the phrase used in Freeman on Judgments: '' 'He further says that it is none the less final . . . *because an account is directed to ascertain what sum is due from one to the other as the result of the decision.*' '' No mention is made in the Brown opinion of Gunder, Middleton and Di Blasi rulings and as applied to

the situation at bar the emphasis on Zappettini is misplaced. See also 3 Witkin on California Procedure, section 4, page 1876.

The other cases cited by appellants are clearly distinguishable and require no specific comment.

We conclude that the judgment before us is interlocutory and hence not appealable.

### THE BROKERS' COMMISSION CASE—No. 25207

Respondents Wesley N. Taylor Co. and Stanley J. Beligan, licensed real estate brokers, received from appellants a written and signed "Non-Exclusive Right to Sell" their property known as 16120-16142 South Western Avenue, Los Angeles. It was dated January 20, 1959, and (as later modified) continued until May 20, 1959, named a price of $135,000, $40,000 cash and instalments of $525 per month, all due and payable in ten years. Also, "I agree to pay said agent five (5) per cent of the selling price as and for the compensation of said agent hereunder in the event of a sale or an exchange of said real property by said agent while this contract is in force. . . . The commission under this agreement shall be 5% on the first $100,000 and 2½% on the balance." Respondents produced Corbett Enterprises, Inc. as a purchaser and on January 26, 1959, a deposit receipt was signed by Beligan as salesman and by Corbett Enterprises, Inc. and appellants Russell. It acknowledged a down payment of $2,000, fixed a price of $120,000, and provided for payment into escrow of $45,000 including the deposit. Its other pertinent terms are quoted above. Following the signatures of Beligan and Corbett is this agreement signed by the Russells: "I agree to sell the above described property on the terms and conditions herein stated and agree to pay the above signed broker as a commission the sum of Five Thousand Five Hundred ($5,500.00) Dollars, or one-half the amount paid as stated above in the event the purchaser does not perform, provided the same does not exceed the full amount of the commission." The conditions and restrictions "listed on the reverse side" of this instrument contain this: "It is understood and agreed between the parties hereto, that this contract is contingent upon the purchaser being able to obtain a first trust deed on the premises in the amount of $50,000.00, payable in equal monthly payments amortized over a period of 15 years, such payments to include interest at not more than 6%. Should the purchaser be unable to obtain such loan prior to 15 days

of the date set for the close of escrow, this contract shall thereupon become null & void and all monies returned to the purchaser...."

The agents, pursuant to their authority and on February 12, 1959, extended the buyer's time for obtaining the loan to March 12th. On the next day appellant Russell learned that Corbett Enterprises, Inc., had received a commitment for a $50,000 loan at 6 per cent to be amortized over a 12-year period (instead of 15 years). He forthwith undertook to cancel the escrow and has consistently refused to release any part of the $45,000 which respondents had placed therein. Plaintiffs Wesley N. Taylor Co. and Stanley J. Beligan sued for recovery of their commission and obtained judgment for $5,500 plus an attorney fee of $850, with interest and costs, from which judgment the Russells appeal.

They rely upon a line of cases exemplified by *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856], which deal with the broker's rights where his commission is represented only by escrow instructions or by other special arrangement to the effect that it is contingent upon the sale being completed. Such is not the case here. Respondents rely upon their "Non-Exclusive Right to Sell" and the deposit receipt above quoted.

While the primary duty of a broker who has been employed by the owner (as here) is to procure a purchaser who is ready, able and willing to buy upon the terms prescribed by the owner, the latter by accepting the proffered purchaser and entering into a contract with him for the sale of the same property upon the original or other terms is estopped to deny the purchaser's ability or readiness to perform and estopped to deny the broker's right to his commission; this is true even if the deal fails of ultimate consummation through the fault of either party.

*Deeble* v. *Stearns,* 82 Cal.App.2d 296, 299 [186 P.2d 173]: "Appellant was not bound to accept the offer of the purchasers without a reasonable opportunity to satisfy himself both as to the purchase price of the property and as to the ability of the purchasers to perform their part of the agreement. Appellant's approval of the contract submitted by him and his acceptance and retention of the deposit of $2,000 which constituted part payment estop him from denying the claim of the broker for his commission. [Citation.] . . . The execution of a contract of sale by the owner of real property is conclusive proof that he was satisfied as to the qualifica-

tions of the purchaser and of his ability to perform the contract, thus rendering the owner liable for the payment of the broker's commission. [Citation.]"

In *Austin* v. *Richards*, 146 Cal.App.2d 436, 439 [304 P.2d 132], Mr. Justice Vallée (who was also author of the Lawrence Block opinion, *supra*), says "A broker properly authorized to sell property has performed his contract and is entitled to his commission when he proves he has in pursuance of his employment and within the time specified procured a buyer ready, willing, and able to buy on the terms and conditions specified in the contract of employment; or, if the exact terms are not specified in his contract, on terms satisfactory and acceptable to his employer. (9 Cal.Jur.2d 255, § 87.) The execution of a contract of sale by the owner of realty is conclusive proof that he was satisfied as to the qualifications of the purchaser and of his ability to perform the contract, thus rendering the owner liable for the payment of the broker's commission. [Citations.] Defendant's approval of the contract with Gerhardt estops her from denying plaintiff's claim for his broker's commission. [Citations.] The fact that because of inadequacy of consideration Gerhardt could not compel defendant to specifically perform the contract is not a defense to plaintiff's action for his commission. Plaintiff procured a buyer who was ready, willing, and able to buy, and who was accepted by defendant. Plaintiff earned his commission." (See also *Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875, 880 [306 P.2d 783]; *Mann* v. *Mueller,* 140 Cal.App.2d 481, 486 [295 P.2d 421]; *Mitchell* v. *Johnston,* 140 Cal.App. 2d Supp. 982, 984 [398 P.2d 170].)

It is doubtless true, as appellants contend, that a conditional acceptance of a prospective buyer or his offer does not estop the seller to deny performance on the broker's part where the condition is not performed (*Edwards* v. *Billow,* 31 Cal.2d 350, 361 [188 P.2d 748]), but that is not our case. There was no condition to the acceptance of the purchaser or to the terms of the deposit agreement. That instrument did contain conditions to be fulfilled by both of the parties but that is quite a different thing from conditional acceptance of those terms. Appellants in the deposit receipt specifically agreed "to sell the above described property on the terms and conditions herein stated."

*Love* v. *Gulyas,* 87 Cal.App.2d 608 [197 P.2d 405], cited by appellants, is not opposed to these views for there never was an agreement between the seller and the prospective pur-

chaser. Had there been one which recognized a condition that the buyer be able to raise the necessary money to pay the purchase price, that case would have been quite different and might have been decided differently.

It seems to be the law that acceptance of a conditional deal procured and presented by the broker does not ripen into a right to a commission unless that condition, precedent or subsequent, is performed. See *Colton* v. *O'Brien*, 217 Cal. 551, 553 [20 P.2d 43]; *McAdoo* v. *Moore*, 70 Cal.App. 408, 410-411 [233 P. 391]; *Leipsic* v. *Taggart*, 101 Cal.App. 726, 728 [282 P. 400]; *Lawrence Block Co.* v. *Palston, supra,* 123 Cal.App.2d 300, 309; *McFarland* v. *Heady*, 123 Cal.App.2d Supp. 973, 976 [267 P.2d 460]; *Cochran* v. *Ellsworth,* 126 Cal. App.2d 429, 439 [272 P.2d 904]. So assuming, it nevertheless follows that the condition here involved was fulfilled through the waiver hereinafter discussed.

The trial court found "That it is true that all of the conditions listed on the back of the contract attached to the complaint as Exhibit 'A' [deposit receipt] were imposed by the plaintiff, and were for the sole benefit of the plaintiff," and the finding is supported by the evidence.

It is, of course, well settled that a contracting party may waive provisions placed in a contract solely for his benefit. *Isaacson* v. *G. D. Robertson & Co.,* 85 Cal.App.2d 71, 75 [192 P.2d 486]; *Johnson* v. *Lehtonen,* 151 Cal.App.2d 579, 582 [312 P.2d 35]; *O'Connell* v. *Zimmerman,* 157 Cal. App.2d 330, 336 [321 P.2d 161]; *Pease* v. *Brown,* 186 Cal. App.2d 425, 428 [8 Cal.Rptr. 917].

It is generally held that a provision of the type here involved, one which by its terms is contingent upon the ability of the buyer to obtain a loan, is inserted for the buyer's benefit "so that he would not be liable for breach of contract unless he could borrow the money with which to pay for the land. He was at liberty to waive the benefit of this clause and to assume an unconditional obligation to fulfill the contract. This he did by filing his bill, so that there is now complete mutuality between the parties." (*Gottlaub* v. *Cohen,* 139 N.J. Eq. 323 [51 A.2d 254, 256].)

The following cases hold that such a provision is for the sole benefit of the vendee; that the vendor's interest is in securing the purchase price; that the paramount obligation of the respective parties is the payment of the cash and the delivery of title to the property, and that the method of financing is incidental and not of the essence of the contract

to convey. (*Morrison* v. *Mioton,* 163 La. 1065 [113 So. 456, 459]; *Weingart* v. *Delgado,* 204 La. 752 [16 So.2d 254, 256]; *Pierce* v. *Watson,* 252 Ala. 15 [39 So.2d 220, 222]; *McCarty* v. *Harris,* 216 Ala. 265 [113 So. 233, 234]; *Nyder* v. *Champlin,* 401 Ill. 317 [81 N.E.2d 923, 926, 5 A.L.R.2d 282]; 5 A.L.R.2d 287, 294.) See also *Johnson* v. *Lehtonen, supra,* 151 Cal.App. 2d 579, 582; *O'Connell* v. *Zimmerman, supra,* 157 Cal.App. 2d 330, 335-336; *Pease* v. *Brown, supra,* 186 Cal.App.2d 425, 428.

Mr. Beligan, one of the brokers, testified that, between January 28, 1959 and February 12, 1959, he had a conversation with Dr. Russell as follows: "I told him that I had made application for loans and that it looked favorable and that I had a verbal commitment from Southwest Savings and Loan that they would make the loan after formal application was made and after the property had been appraised, and I told Dr. Russell that it looked very favorable, and then he gave me his first indication that he wasn't entirely satisfied. . . . He told me that he didn't think that he had made as good a deal as he had originally thought when he went into it; that he had seen his tax adviser, and according to his tax adviser's figures, his capital gain tax would run a lot more than he originally anticipated and that he didn't care if the deal went through or not and that he was going to hold us to the letter of the contract entirely."

The trial court's finding that this condition was placed in the contract by the plaintiff and for his sole benefit is supported by the evidence and the law. The evidence indicates strongly a desire of appellants to get out of a deal which they had decided to be an unsatisfactory one for them.

The condition precedent of securing the loan having been inserted in the contract at the instance of and for the sole benefit of the respondent, and by him waived, "that condition of the contract must be considered as having been fulfilled." (*Morrison* v. *Mioton, supra,* 163 La. 1065 [113 So. 456, 459].)

Finally it should be said that an owner who repudiates his contract without legal cause and before the buyer's time to perform has expired is obligated to pay the broker the agreed commission. (*Realty Bonds etc. Co.* v. *Point Richmond etc. Co.,* 171 Cal. 238, 241 [152 P. 433]; *Cochran* v. *Ellsworth, supra,* 126 Cal.App.2d 429, 438; *Diamond* v. *Huenergardt,* 175 Cal.App.2d 214, 222 [346 P.2d 37]; *Johnson* v.

*Goldberg,* 130 Cal.App.2d 571, 578 [279 P.2d 131].) It will be recalled that the extended time for the buyers procuring a 15-year loan would have terminated on March 12th, but appellants repudiated the contract on February 16th.

Appeal from judgment in No. 25216 is dismissed. Judgment in No. 25207 is affirmed.

Fox, P. J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied September 8, 1961, and appellants' petition for a hearing by the Supreme Court was denied October 11, 1961.

---

*Assigned by Chairman of Judicial Council.