Filed 6/14/13  Miller v. Miller CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBIN G. MILLER,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KORI MILLER,<br><br>    Defendant and Appellant. | G046462<br><br>(Super. Ct. No. 30-2011-00448506)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.

Kori Miller, in pro. per.; Bauer & Associates, Sandra L. Bauer and James M. Lloyd for Defendant and Appellant.

Emge Law Group and Holly M. Emge for Plaintiff and Respondent.

\*          \*          \*

This appeal arises from a dispute between siblings Robin G. Miller and Kori Miller over the terms of a trust.[1] On the first day of a trial that was to determine whether certain purported amendments to the trust were valid, the parties settled, orally stating the terms on the record. Kori later claimed the settlement was invalid, but the court enforced the settlement under Code of Civil Procedure section 664.6.[2] Kori appeals from that order. Kori's brother Robin has moved to dismiss the appeal on two grounds: (1) Under the "disentitlement doctrine," Kori's violation of a court order should preclude her from seeking the assistance of this court; and (2) Kori's acceptance of the benefit of a portion of the judgment waived her right to appeal. For the reasons expressed below, we deny the motion to dismiss.

On the merits of the appeal, Kori argues (1) the court lacked jurisdiction to enforce the settlement because the parties did not request the court to retain jurisdiction, (2) the settlement was unenforceable because the parties did not express their assent to the settlement in the same manner — Kori consented orally in open court and Robin later consented in writing outside of court, (3) a condition precedent to the settlement agreement was that it be reduced to writing on the same day, and it was not, and (4) the oral settlement agreement omits material terms. We reject each of these arguments. The court retained jurisdiction, despite the absence of an express request by the parties, because a final judgment had not yet been entered at the time the agreement was enforced. Section 664.6 does not require each party to express their assent in the same manner. It is enough if each party expresses their consent in a manner specified by the statute; i.e., orally on the record or in writing outside of court. Kori waived the asserted condition precedent to the effectiveness of the agreement. And finally, the contention

---

[1] To avoid confusion between Kori Miller and Robin Miller, we refer to them by their first names. We intend no disrespect.

[2] All statutory references are to the Code of Civil Procedure.

that the oral settlement omitted material terms lacks record support. Accordingly, we affirm the judgment.

FACTS

The largely undisputed facts stated below are taken from the parties' various declarations in connection with the motion to enforce the settlement.

In August of 2010 Robert B. Miller passed away. His trust contained approximately $1 million in cash and stocks and an ocean-front house appraised at $1.5 million, where he had lived for some time with Kori and Kori's boyfriend. Kori and her boyfriend continued to live rent free in the home after Robert's death.

Robert was survived by four children, including Kori and Robin. Under the terms of the trust, each surviving sibling was entitled to an equal share of the res. As originally drafted in 1996, the trust named Robin as the sole successor trustee.

Shortly before Robert's death, however, Kori revealed to Robin certain purported amendments to the trust that benefitted Kori. In particular, Kori was granted a life estate in the house, and all four siblings were made co-trustees such that any action concerning the trust required the unanimous consent of all four siblings (which, of course, gave Kori veto power).

Robin, suspicious of the validity of the purported amendments, filed the underlying petition in the superior court to determine the validity of the amendments. According to Robin's verified petition, his handwriting expert would testify that the signatures on the amendments were forged. Further, the notary who purportedly notarized the amendments would testify that he did not do so, but rather notarized a different document, and that the notarization on the amendments themselves show signs of tampering and being fraudulent. Robin also claimed any amendments that were signed by the decedent were procured by undue influence.

3

Kori denied Robin's allegations. She claimed Robert made the amendments in response to Robin's attempt to assert control over the trust during Robert's lifetime when Robin falsely claimed Robert was no longer of sound mind.

Trial was set for November 14, 2011. Robin appeared with counsel and witnesses prepared to begin. Kori showed up late, and the trial was continued until the next day. The next day, Kori indicated she wanted to talk to the judge about settlement. As a result, the parties had an unreported settlement conference with the trial judge in chambers.

The parties reached a settlement and read the terms of the settlement into the record as follows: "The first term is that Kori Miller will . . . have 90 days to purchase the residence . . . for 75 percent of the value of $1,550,000. If Ms. Miller is unable to purchase the home for that amount of money, then she will remove herself, her occupants, and all of her personal belongings immediately. The trust will pay to Ms. Miller $6,000 towards the cost of her living elsewhere. In addition to that, the trust will pay the other three beneficiaries $6,000. The trust will immediately disburse to Ms. Miller and the other three beneficiaries $10,000 each. Upon the 91st day from today, the amendment subject to this lawsuit will be set aside and will be deemed invalid, and the parties will enter into a . . . written settlement agreement, and that will be signed by 4:30 this afternoon, and if not, we will proceed with trial tomorrow morning." After the recitation, the court confirmed Kori's understanding and acceptance of the terms: "Ms. Miller, we've discussed those terms in chambers. Do you understand those terms? [¶] Ms. Miller: Yes, I do. [¶] The court: And do you agree to those terms? [¶] Ms. Miller: Yes. . . . [¶] . . . [¶] The court: And do you understand that this is a settlement that's on the record" "and therefore it's enforceable if anybody should breach this agreement?" "Ms. Miller: Yes." The court did not confirm Robin's acceptance on the record.

Later that day Kori arrived at Robin's counsel's office to review a draft written agreement but refused to sign it, claiming it contained material terms the parties

had not agreed upon. Accordingly, the parties showed up in court the following day for trial. The judge brought the parties and counsel into chambers for a conference where Kori stated she did not want to go to trial and once again reiterated she understood the settlement as stated on the record to be binding on her and Robin. She indicated she wanted it to be binding on her other two siblings as well, but the judge explained he had no power to do that because the other siblings were not parties to the lawsuit. Kori reaffirmed, nonetheless, that the settlement was valid. On that basis the judge vacated the trial and ordered Robin to dismiss his witnesses. Afterwards, the judge took the bench again and stated, "[A]s far as I'm concerned, we have a settlement on the record, and we'll see what happens next."

What happened next was that Kori denied the settlement was binding. She claimed through her new attorney (her fourth in the litigation up to that point) that the settlement was not binding because there was no written settlement agreement.

Robin then filed an ex parte motion to enforce the terms of the settlement under section 664.6, or alternatively, to shorten notice for the hearing of the motion. Robin sought expedited relief based in part on his concern that Kori had engaged in a pattern of stalling so as to give herself and her boyfriend additional rent free time in the residence. Robin expressed the additional concern that Kori and her boyfriend had let the house fall into disrepair. Although Kori threatened to call the police if any of the other beneficiaries tried to come into the residence, pursuant to a discovery request Robin was permitted to inspect the home and take photographs, which revealed the house was in poor condition. In connection with the enforcement motion, Robin filed a declaration stating his acceptance of the terms of the settlement and attached a copy of the reporter's transcript of the hearing where the terms were recited.[3]

---

[3] The two non-party siblings similarly signed declarations agreeing to all the terms of the settlement agreement. These declarations were also submitted in support of the enforcement motion.

Kori opposed on the grounds the settlement agreement had not been reduced to writing and was, therefore, not binding, and also that the proposed written agreement had contained material terms the parties never agreed upon.

The trial court heard the motion on shortened 17-day notice, and granted it, finding the oral settlement agreement on the record in open court was binding on the parties, and enforced the terms due for performance at that time. "The court finds that the oral settlement placed on the record was binding on the parties thereto. While the parties did contemplate reducing the settlement to writing, this was not a material term. The oral agreement placed on the record contained the material terms of the agreement. In reliance on the settlement, the trial did not go forward. At this time the trust is ordered to disburse to the beneficiaries $10,000.00 each. Since the time limits on the other terms of the agreement are not yet completed, the court shall reserve jurisdiction to enforce the remaining terms as they become due." The court held only the terms stated on the record were binding, not any additional terms in the proposed written agreement. Kori timely appealed.

After Kori filed her notice of appeal, Robin moved under section 917.9 to require an undertaking to maintain the stay on appeal. Finding Kori was in possession of property (the house) in which Robin held a partial interest, the trial court set a bond of $80,000 to protect against lost rental income. In response, Kori filed a motion for an immediate distribution of funds from the trust to pay for the bond, which the trial court granted. Kori did not post a bond, but instead used the funds for personal expenses. As a result, the trial court lifted the stay on appeal.

Thereafter, Robin moved to enforce the remaining terms of the settlement, which the court granted, ordering Kori to vacate the residence.[4] Prior to being evicted, Kori's attorney sent a letter to Robin's attorney stating that Kori would not move out

---

[4] Kori did not appeal from this order.

6

unless Robin paid her the $6,000 owed under the settlement agreement. Kori's attorney stressed this was not a concession that the settlement was valid: "In addition, since you have proceeded despite the filing of the appeal, my client's demand for the funds due to her is in no way [a] waiver of my client's right to her appeal. Nor is it an acknowledgment that the purported settlement is valid and accepted. You cannot have it both ways." On the same day that Kori was evicted, Robin paid the $6,000, and Kori subsequently deposited the check.

DISCUSSION

*Appealability*

Regardless of whether an appealability challenge is raised, "[t]he existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by . . . section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

Kori appeals from the trial court's order enforcing the settlement agreement under section 664.6. Section 664.6 provides that a court may enter a "judgment" enforcing the settlement agreement, which the court did not do. Nonetheless, absent a formal entry of judgment, an appellate court may amend an order to include a judgment if the effect of the order is to finally determine the rights of the parties in the action. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698–700.) In nearly identical circumstances the courts in *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1252 and *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183, applied this rule to amend an order under section 664.6 to become a final judgment where it appeared the trial court intended to finally determine the rights of the parties in the action.

Here, the sole relief Robin sought in his petition was a finding that the purported amendments to the trust were invalid (together with a prayer for fees and

7

costs). The settlement provided for that relief. We conclude, therefore, that the trial court intended the order enforcing the settlement to finally dispose of the rights of the parties to the action. Accordingly, we will amend the order to include a final appealable judgment and deem Kori's appeal to be from the judgment.

*Motion to Dismiss*

Robin's motion to dismiss the appeal asserts two grounds: (1) the "disentitlement doctrine"; and (2) Kori's acceptance of the $6,000 settlement payment.

*1. The Disentitlement Doctrine*

A reviewing court has the inherent power to dismiss an appeal by any party who has refused to comply with trial court orders. (*TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379.) The disentitlement doctrine is based on the equitable notion that a party to an action cannot seek the assistance of a court while the party "stands in an attitude of contempt to legal orders and processes of the courts of this state." (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) A formal judgment of contempt, however, is not a prerequisite to exercising our power to dismiss; rather, we may dismiss an appeal where there has been willful disobedience or obstructive tactics. (*Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1683; *In re Claudia S.* (2005) 131 Cal.App.4th 236, 244.) "This penalty . . . is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 2:340, p. 2–172 (rev. # 1, 2012).)

Robin asserts we should dismiss this appeal based on Kori's refusal to post a bond with the $80,000 she asked the court for. Based on the limited record we have, it does appear Kori misled the trial court. She filed a motion "for immediate partial distribution of beneficiary's trust funds for the payment of undertaking on appeal and

attorney's fees." As a result, the trial court granted her request and specifically ordered her to use the funds for the undertaking. She used them for personal expenses instead.

While we strongly disapprove of her conduct, we decline to dismiss the appeal for several reasons. First, Robin had an adequate remedy that he has already exercised, enforcement of the judgment in the absence of a stay on appeal. Second, the order to post a bond is not the order on appeal in this case. While it is related, Kori's violation of that order in no way threatens the integrity or effectiveness of the appeal, particularly since Robin had the option to enforce the settlement. Finally, Kori is not currently in contempt. Typically, the disentitlement doctrine is applied under circumstances in which the appellant is presently disobeying a court order, such as, for example, a parent challenging a custody order while absconding with the child (*MacPherson v. MacPherson, supra*, 13 Cal.2d at p. 277), or a criminal defendant appealing a conviction but fleeing and hiding from law enforcement (*People v. Kubby* (2002) 97 Cal.App.4th 619, 621). Here, by contrast, there is no ongoing violation. We would not expect Kori to post a bond now that Robin has already enforced the court's order. Thus we decline to dismiss the appeal under the disentitlement doctrine.[5]

2. *Acceptance of the $6,000 Payment*

"'It is the settled rule that the voluntary acceptance of the benefit of a judgment or order is a bar to the prosecution of an appeal therefrom.'" (*Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 214; see *In re Estate of Shaver* (1900) 131 Cal. 219, 221 ["The right to accept the fruits of a judgment, and the right of appeal therefrom, are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these

---

[5] Robin also claims Kori filed frivolous motions in the trial court and otherwise engaged in stalling tactics to avoid eviction. Robin provided an insufficient record to determine whether the alleged conduct would constitute a ground for dismissal and, in any event, we would be disinclined to dismiss on that ground for the same reasons stated above.

courses is, therefore a renunciation of the other"].)  That rule, however, is "subject to qualifications," including that "the appellant must demonstrate a clear and unmistakable acquiescence in, or, to put it another way, an '"unconditional, voluntary and absolute"' acceptance of, the fruits of the judgment."  (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 744.)

We find no such unqualified, unconditional acquiescence in Kori's acceptance of the $6,000.  To the contrary, even as Kori accepted the $6,000, Kori's attorney continued to insist the settlement should not be enforced at all.  This was not an election, rather, it was a conditional acceptance:  *If* Robin insisted on enforcing the settlement despite the appeal, *then* he would have to comply with his obligations under the agreement and pay Kori.  This sort of conditional acceptance does not constitute an "unconditional" and "absolute" election of the judgment over the appeal.  We, therefore, deny Robin's motion to dismiss.

*The Appeal*

We turn now to the appeal.  As a threshold matter, Kori contends the trial court lacked jurisdiction to enforce the settlement under section 664.6 because the parties never agreed to have the court retain jurisdiction under that statute.  Section 664.6 provides:  "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.  If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."  The trial court held there was no need for the parties to agree to retain jurisdiction because the matter was never dismissed, and thus the court never lost jurisdiction.  We agree.

Addressing the provision in section 664.6 for retention of jurisdiction, the court in *Wackeen v. Malis* (2002) 97 Cal.App.4th 429, stated, "the effect of that

10

amendment is to provide courts with continuing jurisdiction over parties and their litigation, for the purpose of enforcing their settlement agreement, *despite a suit's having been dismissed after the execution of the agreement*." (*Id*. at p. 433, italics added.) This comports with the structure of section 664.6. The first sentence provides that in "pending litigation" a court may enforce a settlement as a judgment. The second sentence states, "If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (*Ibid*.) There is no indication in the text of the statute that a request for retention of jurisdiction (the second sentence) is a condition of enforcing a settlement agreement (the first sentence) where the pending litigation is still active. As the *Wackeen* court observed, "When a court has jurisdiction over the parties and subject matter of a suit, its jurisdiction continues until a final judgment is entered." (*Id.* at p. 437.) Here, no judgment was entered before the court entered its order. Thus the court had jurisdiction to hear the motion.

Kori next contends the settlement is procedurally infirm because, while *she* orally agreed to the settlement on the record, *Robin* did not personally do so, only his attorney did. Section 664.6 requires the parties themselves to agree to a settlement, not merely the parties' attorneys. (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 584.) And it requires that *both* parties agree to the settlement, not just the party against whom enforcement is sought. (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1262; *Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 304.) Here, only Kori stated her agreement on the record, not Robin. If the record stopped there, we would have to reverse.

But it does not. In support of the enforcement motion, Robin filed a declaration agreeing to the terms of the settlement, and he attached a copy of the reporter's transcript containing the settlement terms. Robin's declaration was sufficient

11

to bind him to the settlement agreement under section 664.6. *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421 (*Elyaoudayan*) is directly on point.

In *Elyaoudayan* the parties reached a settlement at the beginning of trial and recited the terms of the settlement on the record. Plaintiff and codefendant Elyaouudayan were present in court and agreed to the terms, but a family of codefendants referred to as the Hoffmans were not present. The Hoffmans' attorney claimed authority to enter into the settlement on their behalf and did so. (*Elyaoudayan*, *supra*, 104 Cal.App.4th at p. 1425.) The parties agreed the settlement would be reduced to writing. Afterwards, Elyaoudayan's counsel drafted a written stipulation that mirrored the terms agreed to in the transcript and sent it to each party. Plaintiffs and the Hoffmans signed. (*Id*. at p. 1426.) At this point, however, Elyaoudayan grew concerned that the other parties were not complying with their obligations under the settlement agreement and thus refused to sign. (*Id*. at pp. 1426-1427.) The Hoffmans filed a motion to enforce the settlement under section 664.6. Elyaoudayan opposed on the ground the Hoffmans were not present in court to orally agree to the terms of the settlement. (*Elyaoudayen*, at p. 1427.)

The *Elyaoudayan* court succinctly summed up its holding as follows: "The question presented in this appeal is whether a party who agrees to a settlement in writing outside the presence of the court may enforce it against a party who agreed to the same settlement orally before the court. We answer that question in the affirmative." (*Elyaoudayan*, *supra,* 104 Cal.App.4th at p. 1424.) The court reasoned, "Nothing in the statutory language suggests that, in a multi-party action, *all* parties must agree to the settlement *in the same manner.* And as long as the parties agree to the *same material terms,* be it orally or in writing, the purpose of section 664.6 is satisfied." (*Id.* at p. 1428.) As our Supreme Court explained in *Levy v. Superior Court*, *supra*, 10 Cal.4th 578, the purpose of requiring the parties themselves to agree to the settlement is that "[t]he litigants' direct participation tends to ensure that the settlement is the result of their

12

mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent." (*Id*. at p. 585, fn. omitted.)

We agree with *Elyaoudayan* that nothing in the text of section 664.6 requires the parties to assent to the settlement in the same manner. We also agree that the purposes of section 664.6 are served equally well by oral or written affirmations, or some combination of both. The important point is that the *party* assented, not simply the attorney. Here, Robin filed a declaration assenting to the terms as stated on the record and he attached a copy of the reporter's transcript in which the terms are recited. Section 664.6 required nothing more. (*See Critzer v. Enos*, *supra*, 187 Cal.App.4th a p. 1258 [distinguishing *Elyaoudayan* where two of the parties "neither . . . gave its or his subsequent written consent by signing a writing attaching the reporter's transcript (reciting the Settlement terms)"].)

Next Kori contends the settlement agreement is invalid because it was never reduced to writing as required under the terms of the agreement. The trial court held the written-agreement requirement was not a material term of the settlement and enforced it despite the lack of a writing. Even assuming, without deciding, that the trial court was wrong and that the written-agreement requirement was a material term, Kori waived the requirement of a written settlement agreement.

"It is, of course, well settled that a contracting party may waive provisions placed in a contract solely for his benefit." (*Wesley N. Taylor Co. v. Russell* (1961) 194 Cal.App.2d 816, 828.) "Waiver requires the intentional relinquishment of a known right upon knowledge of the facts. . . . As a general rule, doubtful cases will be decided against the existence of a waiver. [Citations.] Waiver may be express, based on the words of the

13

waiving party; or implied, based on conduct indicating an intent to relinquish the right."
(*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1188.)

It is clear Kori waived the written-agreement requirement. When Kori refused to sign the written agreement and showed up in court the next day, she stated she did *not* want to go to trial, even though that was what the oral settlement said was supposed to happen under these circumstances. She then expressly reaffirmed the terms stated on the record were binding on her, even though the parties had not reduced their agreement to writing.[6] In reliance on that agreement, the trial court vacated the trial date. Kori, therefore, waived the right to a written settlement agreement.

Kori's final contention is that the settlement agreement omitted material terms. Her only citation to the record, however, is to her own declaration where she states, "I *believed* that [the other two beneficiaries] would, as part of the subject settlement agreement, also resolve their future claims against me and release me from all their related claims." (Italics added.) A party's unexpressed belief, however, does not form part of the contract. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 ["A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts"]; *id.* at p. 811 ["'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe'"].)

Kori's only other attempt at identifying omitted terms is her comment, without any citation to the record, that "[t]he oral settlement does not speak to the dissemination of funds of the trust, which should have been done at [*sic*] settlor's death, nor the division of proceeds from the sale of the home, assuming Appellant could not

---

[6] We have Kori's statements through Robin's counsel's declaration in support of the section 664.6 motion reporting what was said on the day of trial. Kori did not object to that declaration, nor has she disputed making such statements.

14

purchase the home. *Indeed, it is unknown what 'other terms' were discussed in chambers*, but certainly it is precisely for such a situation as this, that the agreement was to be set down in writing." (Italics added.) In other words, Kori would have us presume that because the agreement was to be reduced to writing, unknown additional material terms were to be included. We do not presume error, however. It is the appellant's burden to establish error with citations to the record and relevant legal authority. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Kori has not met that burden.

## DISPOSITION

The appealed order is modified to include an appealable judgment. (*Hines v. Lukes*, *supra*, 167 Cal.App.4th at p. 1186.) That judgment is affirmed. Robin shall recover his costs incurred on appeal.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

15