NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LA BORGATA APARTMENTS, L.L.C.,
an Arizona limited liability company,
*Plaintiff/Counterdefendant-Appellant,*

*v.*

RETREAT AT WEST POINT
MULTI-FAMILY LIMITED PARTNERSHIP,
an Arizona limited partnership,
*Defendant/Counterclaimant-Appellee.*

No. 1 CA-CV 18-0763
FILED 10-22-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-012121
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Aiken, Schenk, Ricciardi, PC, Phoenix
By Joseph A. Schenk, Heather A. Macre
*Counsel for Plaintiff/Counterdefendant-Appellant*

Ball, Santin & McLeran, PLC, Phoenix
By Jeffrey Messing
*Counsel for Defendant/Counterclaimant-Appellee*

---

**MEMORANDUM DECISION**

Judge Joshua Rogers[1] delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge David D. Weinzweig joined.

---

**R O G E R S**, Judge:

¶1   La Borgata Apartments, LLC ("La Borgata") sued Retreat at West Point Multi-Family Limited Partnership ("Retreat"), who counterclaimed, both alleging contractual claims based on the parties' agreement that La Borgata would purchase an apartment complex from Retreat. The superior court granted summary judgment in favor of Retreat and dismissed La Borgata's complaint, and La Borgata appeals. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2   In 2012, Retreat borrowed $12,124,600 from Love Funding Corporation ("Love Funding") to purchase an apartment complex (the "Property"). Retreat and Love Funding memorialized the loan in a note ("Note") and secured the loan with a deed of trust ("Deed of Trust") on the Property. The United States Department of Housing and Urban Development ("HUD") insured the loan, and HUD and Retreat entered into a regulatory agreement ("HUD Agreement") imposing certain limitations on Retreat. In particular, Retreat needed HUD's approval before it could transfer the Property.

¶3   La Borgata's predecessors-in-interest, Dr. Farhad and Katheryn Shokoohi, and Retreat entered an Agreement for Purchase and Sale ("Purchase Agreement") of the Property on November 10, 2016. The purchase price was $18,815,000 minus, *inter alia*, the remaining "balance of the [HUD-insured loan] as assumed by" the Shokoohis. The Purchase Agreement directed La Borgata to secure both Love Funding's and HUD's approval for La Borgata to assume the loan.

---

[1]  The Honorable Joshua Rogers, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

¶4          La Borgata had ten months to secure the approvals after the deadline was twice extended to August 30, 2017.[2]  During that period, La Borgata submitted, resubmitted, and supplemented their application to assume the loan; paid $500,000 into escrow for earnest money and fees; and paid Love Funding processing fees Love Funding and HUD required. Nevertheless, on August 29, 2017, HUD rejected La Borgata's application as "seriously deficient."

¶5          La Borgata then proposed the parties either agree to extend the closing deadline for a third time or La Borgata would pay the rest of the purchase price in cash so that the parties could timely close on August 30, 2017.  Retreat rejected both proposals.

¶6          La Borgata sued, alleging Retreat breached the Purchase Agreement and its implied covenant of good faith and fair dealing when Retreat, *inter alia*, failed to accept La Borgata's offer of cash payment of the purchase price.  Retreat counterclaimed that La Borgata had breached the Purchase Agreement and Retreat was entitled to the $500,000 held in escrow as liquidated damages.  Both parties eventually moved for summary judgment.  The superior court granted Retreat's motion, denied La Borgata's motion, and dismissed La Borgata's complaint.

¶7          La Borgata timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).

## DISCUSSION

### A.    Summary Judgment Standard of Review.

¶8          "We review de novo a grant of summary judgment, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Id.* at ¶ 13.  Thus, a court should grant summary judgment when "the facts produced in support of the [opposing party's] claim or defense have so little probative value, given the quantum of evidence required, that reasonable

---

2       Dr. Shokoohi is a principal for La Borgata, and the same attorney represented the Shokoohis and La Borgata before the beginning of these proceeding.  For simplicity, we only refer to La Borgata, unless necessary.

people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

**B.     The Purchase Agreement's Loan-Assumption Provision Does Not Solely Benefit La Borgata.**

¶9          La Borgata argues that the loan-assumption provision in the Purchase Agreement only benefited La Borgata, and therefore La Borgata could waive it; alternatively, La Borgata contends that a question of fact exists over whether Retreat benefited from the loan-assumption provision. "[O]ne party to a contract cannot by his own acts release or alter its obligations," *Demasse v. ITT Corp.*, 194 Ariz. 500, 508, ¶ 23 (1999) (quotation omitted), but a party may waive a contractual provision that only benefits him. *Russo v. Barger*, 239 Ariz. 100, 103, ¶ 12 (App. 2016).

¶10          La Borgata's reliance on *Nelson v. Cannon*, 126 Ariz. 381 (App. 1980) is misplaced. Nevertheless, it is instructive. In that case, the parties entered a contract to buy an apartment complex and the buyer agreed to finance the deal by assuming an existing note secured by a first mortgage, and creating three new promissory notes payable to the seller and two brokers respectively. *Nelson*, 126 Ariz. at 382. The parties subsequently learned that the first mortgage prohibited the method of financing and seller cancelled the agreement. *Id.* The buyer then claimed the seller had improperly cancelled the agreement because the financing terms benefitted the buyer alone and the buyer waived them. *Id.* at 382-83. We agreed, rejecting the seller's purported benefit that it would receive tax benefits from the financing terms when the agreement neither described nor envisioned such benefits. *Id.* at 384.

¶11          The Purchase Agreement here requires La Borgata to apply for HUD approval to assume the existing loan and then actually assume the loan. Retreat asserts that this requirement shields Retreat and its principal from additional costs and penalties, which the Agreement confirms. Retreat and its principal "remain personally liable under this Agreement . . . for authorizing the conveyance . . . or other disposition of the . . . Property . . . without the prior written approval of HUD[.]" The Note contains similar language, and the Deed of Trust notes that both documents impose personal liability. Although Retreat's obligations to HUD end with the loan's repayment, the Note and Deed of Trust provide that Retreat (and its principal) remain liable for violations before repayment:

> [N]othing contained in this [provision] shall . . . discharge
> [Retreat and its principal] from any obligations to HUD under

the [HUD] Agreement . . . which occurred prior to termination
. . . .

La Borgata cites other provisions of the Note, Deed of Trust and HUD Agreement limiting Retreat's liability, but ignores that those provisions each allow for the personal liability stated above.

**¶12**　　　　The Note also imposes a prepayment premium on Retreat for early repayment of the loan.[3]  La Borgata argues the prepayment premium is unenforceable, but this is unclear at best and challenging the enforceability of the prepayment premium would require that Retreat assume the risk and expense of the litigation and any adverse judgment.

**¶13**　　　　In sum, the Agreement directed La Borgata to assume the HUD loan because Retreat would otherwise incur additional costs and penalties.  Retreat would have to pay the prepayment premium or assume the risk and expense of litigation to challenge its enforceability, and face personal liability via sanctions for transferring the Property without HUD approval.  By eliminating this risk, the loan-assumption provision benefits Retreat and *Nelson* does not apply.

## C.　　Retreat is Entitled to the Liquidated Damages.

**¶14**　　　　La Borgata also contests the superior court's award of $500,000 in liquidated damages to Retreat.  Pursuant to the Purchase Agreement, Retreat is entitled to the $500,000 in escrow as liquidated damages when a "Purchaser Deficiency" occurs.  If HUD rejected La Borgata's application while issuing a "No Fault Disapproval," however, La Borgata is entitled to a return of the money in escrow.  The Purchase Agreement further states that, if HUD does not clearly state whether a No Fault Disapproval occurred, "a commercially reasonable interpretation of the HUD Disapproval Letter may be required" and La Borgata may request arbitration on that issue.

**¶15**　　　　Here, HUD's disapproval letter stated La Borgata's application was "seriously deficient" because:

---

[3]　　　　La Borgata's previous attorney calculated the prepayment premium would have been roughly $679,000.  La Borgata's offers to pay the remaining purchase price in cash did not include the additional cost of the prepayment premium.

> [Love Funding's] consent to the transfer ha[d] not been obtained. [Love Funding] confirmed their review has not been completed and they have not issued consent.[4]

The day after the disapproval letter was issued, Retreat sent a letter to La Borgata asserting that "*no* No-Fault Disapproval has been issued by HUD" and Retreat was entitled to the payments in escrow. La Borgata first raised its right to arbitration on January 31, 2018, in its response to Retreat's summary judgment motion. Nevertheless, the superior court ruled La Borgata had waived its right to arbitration and that Retreat was entitled to the money in escrow.

### 1. La Borgata waived its right to arbitration.

¶16 Generally, arbitration agreements are enforceable. *See* A.R.S. § 12-1501 (2019). But a party can waive its right to enforce an arbitration agreement "by conduct that 'warrants an inference of such an intentional relinquishment.'" *In re Estate of Cortez*, 226 Ariz. 207, 210-11, ¶¶ 3-4 (App. 2010) (quoting *Am Cont'l Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 55 (1980)). Such waiver occurs when the party acts "inconsistent with the utilization of the arbitration remedy—conduct showing an intent not to arbitrate." *In re Estate of Cortez*, 226 Ariz. at 211, ¶ 4 (internal quotation marks omitted). This may occur, for example, when a party "unreasonably delay[s] the assertion of the right to arbitrate." *Id.* "Whether conduct amounts to waiver of the right to arbitrate is a question of law we review de novo." *Id.* at 210, ¶ 3.

¶17 La Borgata argues it did not waive its right to arbitrate because it promptly sought arbitration after receiving notice of the arbitrable issue. We disagree. Retreat's August 30, 2017 letter expressly referenced itself as "Notice of Purchase Deficiency[,] Purchaser's Default and Termination of Escrow," specifically asserted that HUD did not issue a No Fault Disapproval, made a demand that the funds in escrow be immediately released to Retreat, and was attached by Retreat to its counterclaim in which Retreat likewise requested an award of the funds in escrow. At a minimum, La Borgata knew that Retreat believed it was

---

4 HUD's letter also states that it had not received fees associated with La Borgata's application, but Retreat does not deny that La Borgata paid these fees to Love Funding, who never forwarded the fees to HUD because Love Funding never approved La Borgata's application.

entitled to the payments because of a "Purchaser Deficiency" when Retreat filed its counterclaim.

¶18            Nevertheless, La Borgata did not raise its right to arbitration when it answered the counterclaim and waited until responding to Retreat's motion for summary judgment—four months later—before mentioning it would seek arbitration.  Even then, La Borgata planned to seek arbitration only after the court had "refuse[d] to grant [its] request for specific performance[.]"   Arbitration at that point would have been duplicative and contrary to the purpose of arbitration.  *See Goldsberry v. Hohn*, 120 Ariz. 40, 44 (App. 1978) ("[T]he object of arbitration is to finally dispose of differences between parties in a speedier and less expensive manner than normal court proceedings.").  Thus, La Borgata waived its right to arbitration by "unreasonably delaying the assertion of the right to arbitrate." *In re Estate of Cortez*, 226 Ariz. at 211, ¶ 4.

### 2.    HUD denied La Borgata's application to assume the loan because of a Purchaser Deficiency.

¶19            Retreat is entitled to the money in escrow as liquidated damages because a Purchaser Deficiency occurred when La Borgata failed to timely provide documents to Love Funding and HUD, which ultimately caused HUD to reject La Borgata's application.  La Borgata knew it needed to timely resubmit and supplement its application.   The Purchase Agreement defines "Purchaser Deficiency" as "[La Borgata's] failure to provide all requested items to HUD . . . or [Love Funding] . . . in a timely manner[.]"   The Purchase Agreement required that, on HUD's or Love Funding's request, La Borgata was to revise and resubmit the application "in no . . . later than fourteen . . . days," and also states that "[t]ime is of the essence of this Agreement" and that "each date set forth herein and the obligation to the Parties to be satisfied by such date have been the subject of specific negotiations by the Parties."

¶20            La Borgata was also aware of the time necessary to process its application. Not only did it warrant it was a "sophisticated purchaser familiar with the . . . assumption and associated paperwork of HUD Loans[,]" the Shokoohis had previously purchased an apartment complex that, like the Property, was encumbered by a HUD-insured loan.  Further, in both this and the prior transaction, the same attorney represented the Shokoohis (and later, La Borgata).

¶21            Despite this knowledge, La Borgata failed to timely provide necessary documentation.  HUD rejected the initial application on January

26, 2017, seven months before the final closing deadline. It electronically resubmitted its application on June 1, 2017, more than four months after the first rejection. Nevertheless, on June 26, 2017, HUD stopped processing the application because La Borgata had failed to provide a requested hard copy of its application. La Borgata finally provided the hard copy on August 23, 2017, less than a week before the closing deadline. On the day of the closing deadline, however, La Borgata had failed to provide additional documents that Love Funding needed to review before it could approve La Borgata's application.

**¶22** Thus, La Borgata knew a Purchaser Deficiency would occur if it failed to timely provide documentation to Love Funding and HUD. Even so, La Borgata consistently failed to timely provide documentation, causing repeated delays in the processing. With these facts, there is "so little probative value, given the quantum of evidence required" to accept La Borgata's argument that Love Funding independently caused the delay and HUD's later rejection. *See Orme Sch.*, 166 Ariz. at 309.[5] La Borgata caused HUD to reject La Borgata's application with its untimely submissions, a Purchaser Deficiency occurred, and Retreat is entitled to the $500,000 in escrow as liquidated damages.

## CONCLUSION

**¶23** For the above reasons, we affirm. Retreat is entitled to its costs on appeal and, in the exercise of our discretion, we award Retreat its reasonable attorney's fees pursuant to A.R.S. § 12-341.01(A) (2019), contingent on its compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] We need not address La Borgata's argument that Retreat should have given terms on which La Borgata could have cured its breach. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007) (court does not address arguments made for the first time in reply brief).